**EASTERN TORPEDO OF OHIO CO. v. SHELTS et al.**

No. 15914—Opinion Filed March 16, 1926.

Rehearing Denied July 13, 1926.

(Syllabus.)

**1. Evidence — Res Gestae — Employee's Statement as to Cause of Explosion Inadmissible.**

Statements of defendant's employee, who had charge of shooting plaintiffs' oil well with nitroglycerin, made immediately after a premature explosion and after plaintiffs, who had sought safety some 100 to 300 feet away, had returned to the well and made in a conversation between such employee and one of the plaintiffs, and in response to the inquiry, "What's the matter, Vande, what's the trouble?" with the reply of defendant's employee, "A leaky shell, of course, nothing else," are not admissible in evidence as part of the res gestae.

**2. Negligence—Res Ipsa Loquitur—Scope of Rule.**

The rule of res ipsa loquitur is a rule of evidence only. It takes more than the mere happening of an accident to set the rule in operation. It must be shown that the occurrence was of such a character as that, in the light of ordinary experience, it is without explanation except on the theory of negligence. The thing causing the accident must have been under the control of the defendant at the time of the accident. Where there are several instrumentalities used in doing the thing out of which the accident arose, some of which were under the control of defendant and others of which were under the control of the complaining party, the doctrine of res ipsa loquitur will not apply where the accident may reasonably have occurred by reason of defects in the instrumentalities under plaintiff's control.

**3. Negligence—Necessity for Proof—Proximate Cause.**

Neither conjecture nor speculation forms a reasonable basis for arriving at a verdict in a case where recovery is sought upon the alleged negligence of the defendant, but there must be evidence reasonably tending to show that defendant was guilty of some one of the negligent acts charged and that such negligence was the proximate cause of the injury.

Error from District Court, Tulsa County; Albert C. Hunt, Judge.

Action by J. V. Shelts, A. O. Eagon, and H. L. Griffin against the Eastern Torpedo of Ohio Company. Judgment for plaintiffs, and defendant appeals. Reversed.

G. C. Spillers, for plaintiff in error.

Moss & Farmer and L. G. Owen, for defendants in error.

MASON, J. The defendants in error, as plaintiffs, began this action in the district court of Tulsa county, Okla., against the plaintiff in error to recover damages alleged to have been sustained by reason of the negligent shooting of an oil well.

The parties will be referred to herein as they appeared in the trial court.

Plaintiffs were the owners of an oil and gas lease on which they had drilled an oil well to a depth of approximately 2,500 feet. The defendant company, after accepting employment so to do, shot the well on August 22, 1922, with 80 quarts of nitroglycerin. On the following day, for some reason, the well was again shot with 140 quarts of nitroglycerin. Although considerable oil was produced after the second shot, the well evidently was not producing in a satisfactory manner, and, on September 4, 1922, the defendant company was called to shoot the well again with 40 quarts of nitroglycerin. In pursuance of this request, the shooter of

the defendant company repaired to the well and attempted to shoot it. When the shell in which the nitroglycerin was being lowered to the bottom of the well, where it was to be exploded, had reached a depth of approximately 815 feet, it prematurely exploded and ruined the well and most of the casing and did other damage.

Plaintiffs' petition and amended petition contain the following general allegations:

"Plaintiffs further allege that nitroglycerin is a highly dangerous explosive, and requires in its manufacture and in its handling, a high degree of care and skill. That the cause of the premature explosion in the plaintiffs' well was the result of the negligence and carelessness of the defendant, either in manufacturing or handling such nitroglycerin. That the defendant had itself manufactured such explosive, and in connection therewith or in the shooting of the said well, as aforesaid, it failed to use the proper degree of care and skill required in the manufacture and handling of the said explosive, and that the said premature explosion, as aforesaid, was due solely to the carelessness and negligence of the defendant, as aforesaid, and would not have occurred if such explosive had been properly manufactured and handled in a careful and skillful and proper manner."

After the introduction of all the evidence, the plaintiffs were permitted, over the objection of the defendant, to amend their petition so as to allege additional acts of negligence. This is urged as error, but, as we view the case, it is unnecessary to discuss the same.

In the amended petition, the plaintiffs allege the following acts of negligence: First, not using ordinary care in inspecting the shell; second, failure to wash and clean the shell after the glycerin had been poured therein; third, using a leaky shell; fourth, lowering the shell at a high and dangerous rate of speed.

The jury found for the plaintiffs, and judgment was rendered thereon for $15,726.25, from which the defendant appeals.

For reversal, it is first urged that the trial court erred in overruling the demurrer of the defendant to the evidence offered on behalf of plaintiffs.

This specification presents the issue whether or not, when all the testimony and the natural and rational inferences from it are carefully considered, there was any substantial evidence reasonably tending to show that defendant was guilty of some one of the negligent acts charged, and that such

negligence was the proximate cause of the injury.

The plaintiffs proved the highly explosive character of the material being used in shooting said well, but introduced no evidence in support of their allegation that defendant was careless and negligent in manufacturing the same. They proved the methods most suitable, in the opinion of witnesses, of inspecting the shells or tubes for leaks; that no such method of inspection was used by the defendant; that it was customary to clean such shells of all particles of nitroglycerin by certain methods before lowering them into the well; that the shell used in the instant case was not cleansed.

Plaintiffs also introduced evidence as to the customary speed of lowering such shells and tubes and introduced certain evidence tending to show that the shell in question was being lowered more rapidly than customary.

The evidence also disclosed that the bit had been run up and down the hole several hundred times; that a swab, used in swabbing out the well, had been run in and out of the well several times a day for several days before the explosion, and that a bailer had been run several times immediately before the shell containing the nitroglycerin was introduced.

The evidence further disclosed that a leaky shell, which allowed nitroglycerin to accumulate on the outside thereof, together with the heat caused by friction in passing down through the casing, might have caused the explosion which occurred

When the nitroglycerin was being lowered into the well, there was no one present except the shooter of the defendant company. All of the other parties present had sought safety in various retreats near the well. Their distances ranged from approximately 100 to 300 feet from the well at the time of the explosion. No one knew what the shooter was doing at the time of the explosion, except that they understood in a general way that he was lowering the shot into the well.

After the premature explosion, the plaintiffs and others near by came to the well and engaged the shooter in a conversation in which one of the plaintiffs asked him the following question, to which he made the following reply:

"Q. What's the matter, Vande, what's the trouble?

"A. A leaky shell, of course, nothing else."

Over the objection of the defendant, the trial court permitted evidence of this conversation to be admitted. This is assigned as error by the plaintiff in error. Was this conversation a part of the res gestae? If so, it was properly admitted. Otherwise, its admission constituted reversible error.

In discussing what constitutes a part of the res gestae, this court, in City of Wynnewood v. Cox, 31 Okla. 563, 122 Pac. 528, said:

"'Res gestae,' as said by Mr. Wharton, in his work on Criminal Evidence (section 262), are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events. What is done or said by participants, under the immediate spur of a transaction, becomes thus part of the transaction, because it is then the transaction that speaks. * * *"

In the case of Missouri, O. & G. Ry. Co. v. Adams, 52 Okla. 557, 153 Pac. 200, it is said:

"In an action for damages arising from a collision between a railway locomotive and a wagon, in which the occupants of the wagon were injured, a statement by the engineer of the train, in response to a question by the conductor, made after the accident had occurred and the train had stopped and the engineer and conductor had alighted therefrom, held, not admissible as a part of the res gestae."

In the body of the opinion, at p. 562, the court says:

"In the opinions of courts of last resort are to be found innumerable decisions upon what is or is not admissible in evidence as a part of the res gestae. The result is that the admissibility of such evidence in every case must depend upon the circumstances of the particular case. But the rule is universal that, to be admissible as part of the res gestae, the statement must be substantially contemporaneous with the transaction, made on the spur of the moment, and induced by the happening of the events concerning which the statement is made, and not a narrative or statement of what has occurred. Smith v. C., R. I. & P. Ry. Co., 42 Okla. 577, at page 580, 142 Pac. 398; Louisville & N. R. R. Co. v. Webb, 99 Ky. 332, 35 S. W. 1117; Durkee v. Central Pac. R. R. Co. (Cal. Sup.) 9 Pac. 99; Fredenthal v. Brown, 52 Or. 33, 95 Pac. 1114."

This court in Coalgate Co. v. Hurst, 25 Okla. 588, 107 Pac. 657, said:

"The defendant (plaintiff in error) offered to prove by one of its employees that within 20 or 30 minutes after the accident, in a conversation with Jenkins near the entrance of the mine, whilst he was then in a semiconscious, or what was termed by the witness as a flighty or groggy condition, that he said: 'I asked Jenkins where his buddy was, and he stated. "He is on ahead, dead, all right. My lower limbs are paralyzed. I told him not to fire the shot, but he said he would go ahead and fire it anyhow'." Was it a part of the res gestae? If so, it should have been admitted. Otherwise, not. Was the alleged statement spontaneous and so connected with the main fact under consideration as to illustrate its character, or to form in conjunction with it one continuous transaction? Jenkins was a servant of the master and may have fired this shot that caused the accident and when confronted with his coemployee with the inquiry as to where his 'buddy' was, being apprehensive as to the consequence of his act, he may have sought to escape such responsibility by placing it upon his coemployee. * * *"

It may be conceded that the statement of the shooter in the instant case was made such a short time after the explosion as to be substantially contemporaneous therewith, but can it be said that it was induced by the happening of the event concerning which it was made? We think not. The statement was made by the person having complete charge of the shooting of said well. He may have been fearful that the consequences of said explosion might be charged to his carelessness, and may have sought to escape such responsibility by placing it upon the instrumentalities furnished by defendant.

We think the facts in the instant case are so similar to those in the case of Coalgate v. Hurst, supra, as to make the rule announced therein applicable and controlling in the instant case. We must conclude, therefore, that said statement of the shooter, made in response to a question by plaintiff, was not a part of the res gestae, although made within a few minutes after the explosion. This conclusion is borne out by the testimony of the shooter himself, and several other shooters, all of whom testified that they had never known a leaky shell to cause an explosion. And by the further testimony of the shooter that, if the shell in question was leaky, he did not know it at the time it was used. We must conclude that the trial court committed reversible error in admitting said conversation in evidence.

Therefore, in weighing the evidence of the plaintiffs to ascertain whether or not it is sufficient to withstand the demurrer of the defendant, we may eliminate the evidence improperly admitted by the trial court, and consider the balance of the evidence as to whether it is sufficient to establish any of the acts of negligence as alleged by plaintiffs

and that such negligence caused the explosion complained of.

It might be conceded that the evidence is sufficient to show that the defendant was guilty of the acts of negligence as charged, yet there is no evidence that such negligence was responsible for or caused the premature explosion of the nitroglycerin which did the damage complained of.

Counsel for plaintiffs, however, insist that it is a permissible inference that the explosion and resulting damage was caused by defendant's negligence, which the jury might lawfully deduce from the fact that the shell was neither inspected nor washed before being lowered in the well. But this inference rests upon two conjectures, the conjecture that the shell leaked and that portions of the nitroglycerin got on the outside of the shell, and the further conjecture that because it was not wiped or washed the nitroglycerin became so heated when the shell was being lowered, by reason of the friction between the shell and the casing, that it exploded.

There was no evidence tending to show that the shell, introduced by the defendant, was leaky, nor that when the same was placed in the casing that it had nitroglycerin on the outside. There is nothing to indicate that an inspection of the shell would have revealed any defect therein, nor that such inspection would have revealed nitroglycerin on the outside thereof.

We may as well conjecture that the shell struck a sliver or broken place in the casing in the well, which was furnished by and under the control of the plaintiffs, or that said casing collapsed so as to jar the shell and explode it before reaching the bottom of the well.

It is evident that the plaintiffs drew their petition upon the theory of the application of the doctrine of res ipsa loquitur to the facts herein, but this doctrine is not applicable.

In the recent case of Carter Oil Co. v. Independent Torpedo Co., 107 Okla. 209, 232 Pac. 419, wherein the facts are practically identical with those in the instant case, this court held as follows:

"The rule of res ipsa loquitur is a rule of evidence only. It takes more than the mere happening of an accident to set the rule in operation. It must be shown that the occurrence was of such a character as that, in the light of ordinary experience, it is without explanation except on the theory of negligence. The thing causing the accident must have been under the control of the defendant at the time of the accident. Where

there are several instrumentalities used in doing the thing out of which the accident arose, some of which were under the control of the defendant, others of which were under the control of the complaining party, the doctrine of res ipsa loquitur will not apply where the accident may reasonably have occurred by reason of defects in the instrumentalities under plaintiff's control.

"Neither conjecture nor speculation forms a reasonable basis for arriving at a verdict in a case where recovery is sought upon the alleged negligence of the defendant, but there must be evidence reasonably tending to show that defendant was guilty of some one of the negligent acts charged and that such negligence was the proximate cause of the injury."

Conjecture is an unsound and unjust foundation for a verdict. Juries may not legally guess the money or property of one litigant to another. Substantial evidence not only of the facts which constitute the acts of negligence charged in the petition, but that such negligence resulted in the damage to the plaintiff, is indispensable to the maintenance of the verdict in favor of the plaintiff. There being no such evidence in the record, we must conclude that the learned trial court erred in overruling defendant's demurrer to the plaintiff's evidence.

There are various other assignments of error presented and argued, which we deem it unnecessary to discuss.

The judgment of the trial court is therefore reversed, with directions to vacate the judgment heretofore rendered and enter judgment for the defendant.

NICHOLSON, C. J., and PHELPS, LESTER, CLARK, and RILEY, JJ., concur. HUNT, J., having tried the case in the lower court, disqualified and not participating.

Note—See under (1) 22 C. J. p. 462 §549; p. 467 §§555 556; p. 468 §556; 10 R. C. L. pp. 986; 987. (2) 29 Cyc. pp. 590, 591, 592, 623, 624; anno. 22 A. L. R. 1471; 20 R. C. L. p. 187; 3 R. C. L. Supp. 1042; 4 R. C. L. Supp. p. 1345; 5 R. C. L. Supp. p. 1087, et seq. (3) 29 Cyc. pp. 622, 623 625.