## CHICAGO, R. I. & P. RY. CO. v. SMITH, Adm'x.

No. 20352.   Opinion Filed July 6, 1932.

Rehearing Denied Nov. 29, 1932.

W. R. Bleakmore, John Barry, and Curran, Sturgis & Hill, for plaintiff in error.

Simons, McKnight, Simons, Mitchell & McKnight, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Garfield county, Okla., under the Federal Employers' Liability Act, in favor of the defendant in error, the plaintiff in the trial court, against the plaintiff in error, the defendant in the trial court, for damages caused by the alleged wrongful death of Thomas C. Smith, a conductor on a train owned and operated by the plaintiff in error, who was run over and killed by the locomotive of that train. Hereinafter the parties will be referred to as plaintiff and defendant, respectively, and the deceased will be referred to as the conductor.

The allegations of the petition as to negligence were denied by the defendant, who pleaded, in addition thereto, "assumption of risk" and "contributory negligence." Under that state of the record it is not necessary for us to review the allegations of the petition.

The record shows that on the 12th day of October, 1927, a freight train, hereinafter referred to as "first No. 94," left El Reno for Caldwell, Kan. When that train reached Okarche, Okla., the train crew received a special train order that train No. 95, southbound, had the right of way and

for first No. 94 to wait at Enid. When first No. 94 reached the Enid yards, it pulled onto what will be called herein a "passing track" and stopped. One of the yard crew then gave an order for it to pull onto what is called "No. 1 track," and the train was pulled onto that track and stopped. The two brakemen then left the train to eat their evening meal. The engineer uncoupled the engine from the train, intending to put it on what is called "No. 2 track." Before he did so, the conductor appeared and said: "* * * Let's take the engine and go through the pass to the coal chute." The conductor got on the rear end of the tender, and, upon the signal of the conductor, the engine was backed onto and over the passing track until it reached a switch leading onto the main line track. That switch stand was set so as to permit the engine to pass onto the switch. The conductor changed that switch stand so that the engine would not pass onto the switch, but would proceed south over the passing track to a portion thereof called the "scale track." The conductor then passed behind the engine and across to the fireman's side of the track. He had a lighted lantern in his hand. He went over to a main line switch stand connecting with the switch to the passing track and changed that switch stand so as to permit a train to pass onto the main line from the switch. He then walked toward that portion of the passing track called the scale track and gave a signal to back up. The engineer, in response to the signal of the conductor, relayed to him by the fireman, slowly backed his engine over the passing track over that portion called the scale track for a short distance. After the engine had passed the switch stand, the engineer inquired of the fireman as to the whereabouts of the conductor and stopped the engine. He remained there for a few minutes until someone signaled for the engine to move forward. He then ran the engine forward past the switch stand, changed the switch stand to permit the passage of the engine backward onto the main line, and the engine passed over the switch and onto and over the main line. When the engineer reached a point opposite the spot where the conductor was last seen walking toward the scale track, the body of the conductor was seen lying on the passing track. It had been run over by the engine.

In this state the mere fact that an injury occurs carries with it no presumption of negligence. Chicago, R. I. & P. Ry. Co. v. Tate, 57 Okla. 215, 156 P. 1182. The burden is upon the plaintiff, in an action to recover damages for an injury caused by alleged negligence, to show the existence of the negligence and that the negligence was the proximate cause of the injury. Star v. Brumley, 129 Okla. 134, 263 P. 1086. A railroad company will not be held liable for personal injuries alleged to have been caused by the negligent acts of its employees, where there is no positive evidence of negligence or of facts from which negligence can be reasonably inferred. Chicago, R. I. & P. Ry. Co. v. Pedigo, 102 Okla. 72, 226 P. 72. Neither conjecture nor speculation may form a basis for a judgment. Eastern Torpedo of Ohio Co. v. Shelts, 121 Okla. 129, 247 P. 974.

Those rules must be applied to the facts shown by the record in this case under the rule adopted by this court as to what constitutes actionable negligence. That rule is:

"To constitute actionable negligence, where the wrong is not willful and intentional, three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure." Chicago, R. I. & P. Ry. Co. v. Barton, 59 Okla. 109, 159 P. 250, and Chicago, R. I. & P. Ry. Co. v. Perkins, 115 Okla. 233, 242 P. 535.

Did the defendant fail to perform any duty to protect the conductor from injury? Unless it did, there was no actionable negligence on the part of the defendant.

At the conclusion of the plaintiff's evidence, the defendant demurred thereto, and at the conclusion of all of the evidence, the defendant requested the court to instruct the jury to return a verdict in favor of the defendant. Those motions were overruled. The defendant contends that there was error on the part of the trial court in overruling them. That a demurrer to the plaintiff's evidence in a personal injury action ought to be sustained, unless it is reasonably apparent from the evidence that the injury sustained by the plaintiff was caused by some wrongful act of the defendant in violation of a legal duty owing to the plaintiff, is well settled in this state, and it is equally well settled that where there is no evidence reasonably tending to show that the defendant was guilty of negligence, it is error for the trial court to submit that issue to the jury. Choctaw, O. & W. Ry. Co. v. Wilker, 16 Okla. 384, 84 P. 1086;

Oklahoma Gas & Electric Co. v. Lukert, 16 Okla. 397, 84 P. 1076; Midland Valley Ry. Co. v. Graney, 77 Okla. 54, 185 P. 1088; Smith v. Clark, 125 Okla. 18, 256 P. 36; Lancaster v. St. Louis & S. F. Ry. Co., 128 Okla. 176, 261 P. 960; White Line Cab & Baggage Co. v. Waterman, 150 Okla. 277, 3 P. (2d) 839, and Roy v. St. Louis-S. F. Ry. Co., 153 Okla. 270, 4 P. (2d) 1038.

There was no negligence on the part of the defendant in the engineer backing the engine past the switch stand that had been set by the conductor on the passing track, unless the engineer knew that the conductor had set that switch stand differently from what the conductor intended to set it. How the conductor intended to set it was known only to the conductor. It is urged in the briefs that the conductor must have intended to set the switch stand on the passing track so that the engine would back over the switch onto the main line. In support of that contention, it is said that there was no other reason for the conductor changing the switch stand on the main line. We cannot agree with that contention. We cannot ascertain from the record why the conductor changed the switch stand on the main line any more than we can determine from the record why the conductor changed the switch stand on the passing track. If the conductor intended the engine to back over the switch onto the main line, it was unnecessary for him to change the switch stand on the passing track. The only reasonable explanation for the action of the conductor in changing the switch stand on the passing track, if he intended the engine to pass over the switch onto the main line, was that he misunderstood the effect of the lights on that switch stand. The plaintiff endeavored to show negligence on the part of the defendant by showing that the lights on the switch stand on the passing track were placed thereon in violation of the rules of the road. That attempt failed for the reason that it was shown that the arrangement of the lights on the switch stand on the passing track, at the time the conductor changed that switch stand, was no different than it had been for the many years during which the conductor had worked in and through the Enid yard. If we are to infer the intent and purpose of the conductor on the night of the accident, we may as well infer that he intended for the engine to go in the way that he fixed the switch stand on the passing track for it to go, as to infer that he intended for the engine to go in a way that he fixed the main line switch stand. In Gypsy Oil Co. v. Ginn, 152 Okla. 30, 3 P. (2d) 714, this court held:

"An inference of negligence must be based upon something other than mere conjecture or speculation, and it is not sufficient to introduce evidence of a state of facts simply consistent with or indicating a mere possibility, or which suggests with equal force and leaves fully as reasonable an inference of the nonexistence of negligence. The inference of negligence must be the more probable and more reasonable inference to be drawn from the evidence."

Conceding that the conductor set the switch stand on the passing track differently from what he intended to set it, there is nothing in the record to show that the engineer was aware of that fact. The condition of the lights of the switch stand on the passing track was as well known to the conductor as it was to the engineer. The engineer knew from the lights on that switch stand that the engine would not pass over the switch, but would go down over the passing track. He testified that he did not know which way the conductor wanted him to take the engine to the coal chute, whether over that switch to the main line and then back to the coal chute, or whether over the passing track to the main line and then forward to the coal chute. The coal chute could have been reached by either way. No. 95 was on the passing track with the lights from its engine shining into the engine of first No. 94. The conductor might have thought that he would have the engine of first No. 94 back down the passing track past the switch stand on the passing track so as to permit No. 95 to pass over the switch onto the main line and get out of the way so that the engine of first No. 94 might take coal at the coal chute. The engineer was justified in thinking that that was the intention of the conductor. The engineer moved the engine on the signals of the conductor over a switch properly set, and it cannot be said that the engineer was negligent in moving the engine in conformity with signals therefor given by the conductor.

The record shows that there was a red lighted lantern on the rear of the tender of the engine. The movement of the engine easily could have been seen. It may be that the conductor did not watch the movement of the engine. Although the conductor intended for the engine to pass over the switch onto the main line, he was not justi-

fied in taking a position on the passing track where he might be run over by the engine. There was plenty of room between the main line track and the passing track for him to stand. He was not justified in failing to watch the movement of the engine. There was more responsibility on him to know that the engine was not moving over the route over which he intended for it to move than there was on the engineer to know that the engine was not moving over the route over which the conductor intended for it to move. The conductor should have watched the movement of the engine. In the language of this court in Buss, Adm'x, v. Chicago, R. I. & P. Ry. Co., 77 Okla. 80, 186 P. 729:

"Deceased being an employee of the defendant, the law did not impose upon defendant the duty to keep a lookout for him or to give him warning of the approaching train; defendant owed him no duty except not to willfully or intentionally injure him after discovering him in a position of danger. Chicago, R. I. & P. Ry. Co. v. McIntire, 29 Okla. 797, 119 P. 1008; Bailey's Personal Injuries (2nd vol.) sec. 2727; 3 Elliott on Railroads (2nd Ed.) sec. 1283; Crowe, Adm'r, v. New York Cent. & H. R. R. Co., 70 Hun. 37, 23 N. Y. Supp. 1100; Aerkfetz v. Humphreys, 145 U. S. 418. 36 L. Ed. 758."

The actions of the conductor show him to have been guilty of contributory negligence, if any primary negligence had been shown, but there was no contributory negligence for the reason that there was no primary negligence.

The plaintiff contends that the orders of the conductor to the engineer to keep the main line track in going into Enid were not followed and that the refusal of the engineer to follow those instructions was the commencement of a chain of circumstances that resulted in the death of the conductor. In other words, the plaintiff contends that had the train proceeded down the main line track into Enid, none of the later circumstances would have occurred. We think that the taking of the train onto the passing track by the engineer was not the proximate cause of the injury and that it did not in any way contribute to the injury.

In Chicago, Milwaukee & St. Paul Ry. Co. v. Coogan, Adm'x, 271 U. S. 472, 70 L. Ed. 1041, that court said:

"By the Federal Employers' Liability Act, Congress took possession of the field of employers' liability to employees in interstate transportation by rail; and all state laws upon that subject were superseded. * * * The rights and obligations of the petitioner depend upon that act and applicable principles of common law as interpreted by the federal courts. The employer is liable for injury or death resulting in whole or in part from the negligence specified in the act; and proof of such negligence is essential to recovery. The kind or amount of evidence required to establish it is not subject to the control of the several states. This court will examine the record, and if it is found that, as a matter of law, the evidence is not sufficient to sustain a finding that the carrier's negligence was a cause of the death, judgment against the carrier will be reversed."

In Interstate Compress Co. v. Agnew, 276 Fed. 882, that court held:

"The rule in the federal courts is that in each case tried by a jury the question of law always arises at the close of the evidence whether or not there is such substantial evidence of the plaintiff's cause of action as will sustain the verdict in his favor and warrant the trial court in refusing in the exercise of its judicial discretion to set a verdict in his favor aside, if rendered, and any evidence, a scintilla of evidence, is not sufficient to warrant such a refusal, and the question of law arises on a request for a peremptory instruction made before the case goes to the jury."

In speaking of the duty of the state courts in trying actions under the Federal Employers' Liability Act, in Gulf, Mobile & Northern Ry. Co. v. Wells, 275 U. S. 455, 72 L. Ed. 370, that court said:

"A judgment for damages cannot stand in an action under the Federal Employers' Liability Act if, under the applicable principles of law as interpreted by the federal courts, the evidence was not sufficient in kind or amount to warrant a finding that the negligence alleged was the cause of the injury."

In St. Louis & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 P. 1083, this court held:

"In an action by an employee against an interstate carrier to recover damages for personal injuries received while engaged in interstate commerce, constitutional and statutory provisions of this state, which are in conflict with the Federal Employers' Liability Act, are suspended and annulled."

The plaintiff calls attention to the case of Toops, Adm'x, v. Atchison, T. & S. F. Ry. Co. (Kan.) 277 P. 57, which case the plaintiff claims to be persuasive in favor of the contentions of the plaintiff. The record in that case shows that the conductor therein was run over and killed about midnight in Rolla, Kan., while the crew of his train

was switching cars. The deceased was struck by certain cars kicked into a switch in violation of the orders of the defendant company. There was no man or light on the rear and no signal given to warn of the approach of the cars. The conductor had not run on that line for some 18 years. There was no eyewitness to the accident and the plaintiff attempted to build her case on circumstantial evidence arising from facts and circumstances surrounding his death and relied mostly upon the right of the deceased to rely upon the observance of the rules of the defendant company by its employees. In that case, as in the instant case, it was contended that there was no evidence to establish primary negligence on the part of the railroad company and that the deceased was in charge of the train crew and planned the switching operations which were carried forward under his orders, and that he assumed the risk. The Supreme Court of Kansas sustained the recovery. The case was taken to the Supreme Court of the United States on certiorari (A., T. S. F. Ry. Co. v. Toops, Adm'x, 281 U. S. 351, 74 L. Ed. 896) and it was reversed on the merits. That court held:

"To justify recovery in an action under the Federal Employer's Liability Act, there must be evidence from which the jury could find that the negligence complained of was the cause of the injury.

"The jury may not be permitted to speculate as to the cause of the injury; and the case must be withdrawn from its consideration unless there is evidence from which it may reasonably be inferred that the injury was caused by the employer's negligence.

"Evidence considered, and found insufficient to go to the jury on the question whether the death of a railroad conductor, who was run down by freight cars during a switching operation at night and in the absence of eye-witnesses, was due to negligence in moving the cars without signal and without placing a light or flagman upon them"

—and said:

"It is the theory of respondent that he attempted to cross the track so as to be in a position to signal the engineer who was on that side of the train. But as the grain cars already were, or were about to be, uncoupled from the train, there was evidently no immediate purpose in his being so located. What actually took place can only be surmised."

In the Toops Case it was not denied that there was negligence, but the court held that it was not shown that the injury was caused by that negligence. In the instant case no negligence was admitted or proved. The evidence, together with all of the inferences which the jury might reasonably have drawn therefrom, fails to support the contention that the injury was caused by the negligence of the defendant, but "leaves the matter in the realm of speculation and conjecture."

We are unable to find from the record that there was any negligence on the part of the defendant in this action. The verdict of the jury and the judgment of the trial court could not have been based on evidence of negligence, for there was none. The verdict and judgment are contrary to the evidence and contrary to the law. For those reasons, the judgment of the trial court is reversed, and the cause is remanded to that court, with directions to vacate the judgment and for further proceedings not inconsistent herewith.

RILEY, HEFNER, CULLISON, and KORNEGAY, JJ., concur. LESTER, C. J., and CLARK, V. C. J., absent. SWINDALL, J., disqualified. McNEILL, J., dissents.

---

Rehearing Denied Nov. 29, 1932.

McNEILL, J. (dissenting). It is my opinion that a rehearing should have been granted in this case. This was a suit against the defendant, railway company, to recover damages under the Federal Employer's Liability Act for the wrongful death of Thomas C. Smith, the conductor in charge of defendant's train at the time of his death. The case was submitted to the jury. The jury returned a unanimous verdict in favor of the plaintiff, the administratrix of the estate of said decedent, against the railway company, assessing the amount of damages in the sum of $20,000, which was approved by the trial court. This court reverses the action of the trial court and remands the case, with directions to vacate the judgment. The court states in its opinion, in part, as follows:

"We are unable to find from the record that there was any negligence on the part of defendant in this action. The verdict of the jury and judgment of the trial court could not have been based on evidence of negligence, for there was none. The verdict and judgment are contrary to the evidence and contrary to the law. For these reasons the judgment of the trial court is reversed and the cause is remanded to that court, with directions to vacate the judgment and for

further proceedings not inconsistent herewith."

It appears that the defendant, railway company, on the night of the accident in question was operating a through freight train from El Reno, Okla., to Caldwell, Kan., and that while said freight train was at Enid, Okla., the engine and tender were separated from said train of cars for the purpose of coaling. It was during this movement of the engine and tender over the tracks that the tender and engine were backed over said decedent. It is the contention of the plaintiff that conductor Smith was endeavoring to route the engine and tender to the main line track to the coal chute at the time of this unfortunate tragedy.

Counsel for plaintiff rely not only on the negligence of the engineer in backing his engine and tender down the wrong track when he knew, or by the exercise of ordinary care should have known, that he was wrong, but also on the negligence of the employees of the defendant in violating rule 104 A which rule is as follows:

"Switches on sidings or cross-over tracks or of a track connecting another track with the main track, must not be turned so as to permit of a movement towards the main track except while such movement is being made. All other switches must be kept set if possible so as to deflect or derail cars before they foul main line, should they be disturbed by high wind or other causes. Switches connecting other tracks with sidings must be kept set for the siding."

In their petition for rehearing, counsel for plaintiff state, in part, as follows:

"As our first ground for granting of a rehearing in this cause, we unhesitatingly assert that this court has absolutely overlooked and failed to appreciate the direct and positive evidence in the case bearing upon the two essential grounds of negligence on which the case was sent to the jury, namely, the negligence of the switching crew in leaving the switch which controlled the cross-over from the passing track to the main line track set for the main line track which was in direct violation of Rule 104 A of the defendant railway company and without which acts of negligence this unfortunate tragedy could not and would not have occurred and which acts of negligence, coupled with the negligence of Ben Neville, to which we will presently refer, united and combine in producing the death of Conductor Smith.

"We search the opinion of the court in this case in vain to find any reference to the negligence of the switching crew in leaving this switch set so as to deflect cars from the passing track to the main line track and yet this is one of the outstanding acts of negligence in the case and one of the grounds upon which the case was submitted to the jury by the trial court. If the switching crew had left the switch that controlled the cross-over to the main track properly set as provided by Rule 104-A, this tragedy could not have occurred.

"It has been decided so many times as to require no citation of authorities that Conductor Smith had the right to rely on observance of the rules of the company by its employees, and he undoubtedly did so rely in this case, and the evidence shows that he did so rely, not by reason of anything said or done by him because he is dead, but by reason of his actions and conduct which speak louder than anything he could have testified to if alive.

"When his train pulled north through this switch stand, it was left straight ahead for the passing track. The rules of the railroad company required that it be so left except when in actual operation and a movement was being made through it. When he returned to it no movement was being made through it. The switching crew had done their work and gone on. It was in the darkness of the night, and waiving for the time being the fact that the lights on this switch stand were set wrong, he had the right to assume that the switch was lined up in the manner required by the rules. * * *

"2. The first thing that Conductor Smith did was to throw the switch that controlled the cross-over from the passing track to the main line and then go over to the main line track and throw the main line switch so that the engine and tender would enter the main line. There is no possible explanation of his actions and conduct in so doing in connection with the other facts and circumstances in the case except that he intended for the engine and tender to go through the cross-over to the main line and proceed down it to the coal chutes. It is erroneous to assume, as is done in the opinion in another place, that Conductor Smith might have thought that he would have the engine of first No. 94 back down the passing track past the switch stand on the passing track so as to permit No. 95 to pass over the switch on to the main line and get out of the way so that the engine of first No. 94 might take coal at the coal chute and that the engineer was justified in thinking that that was the intention of the conductor. Who would suggest that Conductor Smith would be setting the switch stand for No. 95 that was approaching from the north? He was not its conductor nor its engineer nor a yard official nor anyone who had any authority to set the switches for approaching No. 95. He had nothing to do with the movements of No. 95, and there is no evidence in the case that even suggests that he was setting the switch for No. 95. What he was doing and

nothing else, was setting the switch so that his engine and tender would go on over to the main track and then down to the coal chutes leaving the trainmen and yard officials who had control of the movements of No. 95 to direct where and how it should go. * * *

"This court says that the engineer testified that he did not know which way the conductor wanted him to take the engine to the coal chutes. Granted. The answer to it is that the jury did not believe him, for the evidence showed otherwise, and the jury had the benefit of seeing the witnesses upon the stand and reached their own conclusions as to their veracity while this court has nothing but the printed page before it.

"Under the Employers' Liability Law, even if there was negligence on the part of Conductor Smith, yet, if the negligence of the other employees, which either in whole or in part caused or contributed to the death of Conductor Smith, the plaintiff is entitled to recover. Certainly no one could hear the evidence in this case and not reach the conclusion that the negligence of the other employees of the defendant at least contributed to the death of Conductor Smith, and we confidently assert that the record shows that his death was caused entirely by their negligence."

It appears to me that these contentions have merit. In my opinion, the court confuses the negligence, if any, on the part of the engineer as the sole question for determination. The majority opinion ignores another ground of negligence relied upon by plaintiff relative to the acts of the switching crew concerning the manner in which it left the switch as to the main line track. It was only necessary for plaintiff to establish a single act of negligence charged in the petition. The passing track appears to have had an approximate length of practically 9,000 feet, and at the place of the accident was but four or five feet from the main line track. Exhaustive and detailed evidence was presented to the jury on the facts and circumstances surrounding this accident relative to the different tracks, switches, lights, coal chutes, the acts of the employees, and orders, and a review of this record does not justify in my opinion that the verdict of the jury was found on speculation, and that there was no primary negligence shown. The jury had all the facts and circumstances before it. It was their duty to pass on those facts and circumstances as applied to the issues and the instructions submitted to them by the trial court. The jury found the issues in favor of the plaintiff and against

the defendant on the issues on the question of negligence. In my opinion, the verdict should stand. At the most, as I view this record, the conductor could only be charged with contributory negligence, and, under the Federal Employers' Liability Act, even though he was guilty of negligence, this would not preclude a recovery. The court properly instructed on this phase of the case, in its instruction No. 15. For these reasons, I dissent. I am authorized to state that Mr. Justice CULLISON concurs in views herein expressed.