## PINE v. BOWLES.

No. 26380.    April 13, 1937.

C. B. McCrory, for plaintiff in error.

Pryor & Wallace and H. M. Sandlin, for defendant in error.

PHELPS, J.   This was an action for recovery of damages for injury to real estate, caused by the pollution of a river with salt water from oil wells. The action was filed and recovery had against each of three defendants, said defendants being W. B. Pine, Champlin Refining Company, and Eason Oil Company. The verdict and judgment against the latter two were not appealed from, and have become final, and the defendant W. B. Pine prosecutes this appeal as against that part of the judgment which was rendered against him, the verdict having directed that each of the defendants should pay a third of the judgment. (No complaint is made as to the form of the verdict.)

The leases operated separately by the respective defendants are located some 50 or 75 meandering miles upstream from plaintiff's farm. If salt water is permitted to enter certain streams in that vicinity, it will eventually find its way to Little river, and thence down that river and through plaintiff's farm. The judgment against the plaintiff in error is not based upon any joint ownership of his in the leases of his codefendants, for he had no such joint ownership in their leases, and if he is liable at all, such liability is concededly based upon the theory that Little river became polluted by salt water from his own individual lease.

With great care we have read this voluminous record in its entirety. It is very easy to fall into the error of assuming that witnesses were speaking of one lease when they were in fact testifying concerning another lease. Having the record before us, and therefore having the opportunity for a detailed analysis of the evidence, we find that the contention of the plaintiff in error

to the effect that as to him the evidence does not support the finding must be sustained.

There were two streams of water running through the defendant Pine's lease. The streams entered his lease on the north and emerged from it on the south, passing through or over a road which ran east and west. They did not unite at any place on the lease. Above this defendant's lease there were hundreds of wells, operated by several different major oil companies. It was shown that even above this lease the water was polluted with salt. The defendant Pine's evidence revealed that at considerable labor and expense he had constructed special tanks, ponds, and other structures and equipment on his lease to dry out such salt water as was brought up from his wells and kept the salt water from escaping the premises.

On behalf of plaintiff a witness or two testified that "lots of oil and stuff came down the branch from that direction." This was natural enough, in view of the fact that the evidence showing that the branch was in the same condition above the lease was undisputed, but it does not fasten upon the defendant the responsibility for causing the pollution. Another witness testified that some wells were "making water," and if we assume that he meant the Pine wells, we still may not assume from that testimony that the water entered the stream; for that matter, it was never denied that some of the wells produced water, but the uncontradicted evidence was that the defendant impounded and dried it out. It is not the production of the salt water from the wells which would make the defendant responsible; it was the permitting of that water to get into the stream which was necessary to be shown.

Some discussion is had by the parties over the testimony of the witness Hanna, who also has an action pending against the same defendants. Hanna tasted the water, at some point not revealed by the evidence, and found it salty. If he was possessed of any information which would have thrown definite light on the real point at issue, counsel for some reason touched on it but lightly and quickly left it. After asking the witness if he knew anything about an oil lease in that vicinity "owned and operated by Pine or Champlin Refining Company and Eason Oil Company," and the witness had answered, "Well, I don't know, Pine and Champlin is all," the use of the word "they" in the following question, and the general form of the question, considered in relation to the general tenor of the questions and answers at that time, render it and its answer so vague and uncertain as to be of no benefit at all on the precise question before us: "Do you know whether or not they produced any oil or salt water that is permitted to escape?" to which the answer was "Yes, sir." Later in his examination he was asked by the opposing attorney: "I believe you testified you have seen salt water coming from the Champlin lease," and answered "Yes, sir." It was further brought out that his inspection took place after the filing of suit.

The evidence of the defendant revealed that in addition to his other ways and means and sundry methods of taking care of the salt water, he constructed some salt ponds. One witness for plaintiff testified, in rebuttal, that on one occasion in 1931 he had seen some small salt ponds "running over," and the question of whether that which "ran over" eventually got into the creek, or was taken care of in some other manner, is left entirely unanswered. Although having visited the premises and inspected them, the plaintiff himself, when asked directly, refused to testify that any salt water had escaped from the lease in question.

We cannot affirm a judgment based on such evidence as this. With the issues somewhat complicated and a plurality of defendants and leases all being discussed at the same time in the trial court, it is small wonder that this particular defendant was adjudged liable along with the other defendants. From the record we cannot say there was any competent evidence reasonably tending to show that salt water escaped from the lease of this particular defendant and got into the stream, and from there meandered 75 miles, into and through the lands of plaintiff. We are bound by the contents of said record, and we do not feel that we can conscientiously affirm a judgment based on a verdict which is the result of such unsatisfactory evidence. As we said in Eastern Torpedo of Ohio Co. v. Shelts, 121 Okla. 129, 247 P .974:

"Conjecture is an unsound and unjust foundation for a verdict. Juries may not legally guess the money or property of one litigant to another. Substantial evidence of the facts which constitute, not only the acts of negligence charged in the petition, but that such negligence resulted in the damage to the plaintiff, is indispensable to

the maintenance of the verdict in favor of the plaintiff."

Accordingly, the judgment is reversed and the cause is remanded.

OSBORN, C. J., BAYLESS, V. C. J., and CORN and GIBSON, JJ., concur.