**Wesley McCREADY, Administrator of the Estate of E. M. Morris, deceased, Appellant,**

v.

**UNITED IRON AND STEEL COMPANY, a corporation, Appellee.**

**No. 6129.**

United States Court of Appeals Tenth Circuit.

Nov. 7, 1959.

James E. Grigsby, Oklahoma City, Okl. (Howard C. Triggs, Oklahoma City, Okl., on the brief), for appellant.

Gus Rinehart, Oklahoma City, Okl. (Butler, Rinehart & Morrison, Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

BRATTON, Circuit Judge.

This case presents for review asserted error on the part of the trial court in withdrawing the cause from the jury and entering judgment for the defendant. The action was instituted by the administrator of the estate of E. M. Morris, deceased, against United Iron and Steel Company to recover damages for the death of the deceased. Jurisdiction was predicated upon diversity of citizenship with the requisite amount in controversy. Negligence of the defendant in the manufacture of steel casements for windows in a seminary was alleged as the proximate cause of the death of the deceased. It was specifically alleged that the defendant negligently failed to weld a certain cross-bar to one of the casements; that it negligently failed to inspect such cross-bar after it was fitted into place to ascertain the absence of the weld; that it negligently painted the casement to conceal the absence of the weld, when it knew that workmen in plumbing the casements into the walls of a building being constructed would have to use such cross-bars as handholds and supports in fitting and securing the casements in place in the walls of the building; that the deceased was an iron worker; that he was engaged in shortening the outside flanges on the casements by cutting them with a cutting torch; that in ascending and descending the casements he used the steel cross-bars as handholds and footrests; that one of the cross-bars came loose causing him to fall about fourteen feet to the concrete floor which resulted in his death. Negligence was denied and contributory negligence of the deceased was pleaded. When plaintiff rested, defendant moved that the action be dismissed and judgment entered for the defendant. The ground of the motion was the insufficiency of the evidence to warrant a verdict against the defendant. The motion was sustained and judgment entered accordingly.

Appellant contends that the evidence was sufficient to take the case to the jury on the issue of negligence as the proximate cause of the accident resulting in the death of the deceased. It is the general rule that when the evidence relating to negligence is such that fair-minded persons of experience may reasonably draw different conclusions therefrom, the question is one of fact for the jury. Transcontinental Bus System, Inc. v. Taylor, 10 Cir., 265 F.2d 913. But it is the province and duty of the court to direct a verdict where the evi-

dence is without dispute or is conflicting but of such conclusive nature that if a verdict were returned for the plaintiff or defendant, as the case may be, the exercise of sound judicial discretion would require that it be set aside. Commercial Standard Insurance Co. v. Feaster, 10 Cir., 259 F.2d 210.

In a case of this kind, a verdict for plaintiff cannot be predicated upon conjecture or speculation relating to the issue of negligence. Shell Oil Co. v. Haunchild, 203 Okl. 456, 223 P.2d 333. Instead there must be substantial evidence tending to show the acts of negligence pleaded in the complaint; and there must also be evidence tending to show that such negligence proximately caused the damage to the complainant. Eastern Torpedo of Ohio Co. v. Shelts, 121 Okl. 129, 247 P. 974; Pine v. Bowles, 179 Okl. 604, 66 P.2d 1077. Negligence as the proximate cause of damage may be established by permissible inferences, but the inference must be based upon something other than mere conjecture or speculation. Shell Oil Co. v. Haunchild, supra. It does not suffice to introduce evidence tending to show facts which are simply consistent with negligence but suggest with equal force an inference of the nonexistence of negligence. The inference of negligence must be the more probable and more reasonable inference to be drawn from the evidence. Gypsy Oil Co. v. Ginn, 152 Okl. 30, 3 P.2d 714; Chicago, Rock Island & Pacific Railway Co. v. Smith, 160 Okl. 287, 16 P.2d 226; Lawson v. Anderson & Kerr Drilling Co., 184 Okl. 107, 84 P.2d 1104. Evidence which presents a mere choice of probabilities relating to negligence as the proximate cause of damage creates only conjecture or speculation on which a verdict for plaintiff cannot stand. The evidence must bring the theory of plaintiff to the level and dignity of a probable cause. Franklin v. Skelly Oil Co., 10 Cir., 141 F.2d 568, 153 A.L.R. 156.

The admissions contained in the pleadings and the evidence adduced, considered together, tended to establish these facts and circumstances. Walter Nashert Company was the general contractor constructing a building for St. Francis Seminary, located near Oklahoma City, Oklahoma. The building included a chapel. Webster Steel Erection Company was a sub-contractor, performing the steel and iron construction work on the building. The deceased was employed by Webster Steel Erection Company in the performance of its subcontract. Pursuant to plans and specifications furnished to it, appellee fabricated and delivered to the building site ten steel casements for windows in the chapel. The casements consisted of two channel steel uprights about three feet apart connected by horizontal cross-bars. The cross-bars were made of one-eighth inch steel, spaced about two feet apart and were welded to the uprights. Spaced about a foot apart along the outside edges of the vertical channels were welded steel strips or anchors about six inches long. These were to be imbedded in the masonry walls. The casements were painted a reddish rust color. Webster Steel Erection Company placed the casements in position in the chapel, resting them upon the concrete floor and fastening them at the top to horizontal steel beams. At the time of the accident resulting in his death, the deceased was engaged in shortening the flanges or anchors by cutting them with a cutting torch. He had ascended to the top of four of the upright casements using the cross-bars as handhold and footrests. He was working his way up another casement cutting the flanges or anchors. While engaged in such work, it was usual to hold with one hand and cut with the other. When last seen doing such work, the deceased was about a third or maybe half way up the casement. A few minutes later fellow workmen heard a thud and saw the deceased lying on the concrete floor. The hose of the cutting torch was in his hand and the sixth cross-bar from the top of the casement was gone from the frame and was lying on the floor about three

feet from his head. It had at one end only a "tack" weld about the size of a pinhead. An examination, made some time after the accident, of such cross-bar and of another one taken from the same casement indicated to an experienced iron worker that they had been welded but the weld had been ground off and there was no weld on either to hold them. The foreman for Webster Steel Erection Company had at sometime previous to the accident made an inspection of the casements, had found them solid and secure, and had been on some of them. This résumé of the facts and circumstances before the court makes it clear that no one saw the accident or knew how it happened. There was no evidence that the deceased put his hands or feet on the particular cross-bar as one would put them on the rung of a ladder, and that as the result the cross-bar came loose from the uprights. It could be that the accident occurred in that manner. It could be that the deceased lost his balance, and in an effort to regain it, jerked the cross-bar loose from the uprights. It could be that because of some unknown reason he fell from a point above the particular cross-bar; that in the course of the fall, he grabbed or caught the cross-bar; and that his falling weight pulled or jerked the cross-bar loose from the uprights. Or it could have happened in some other manner. The evidence failed to show with the required degree of probability or certainty the cause of the accident. It left the cause in the realm of speculation and conjecture. It presented merely a choice of probabilities in respect to the cause of the fall. And that was not enough to take the case to the jury on the issue of negligence pleaded in the complaint.

■■■ For another reason, the evidence was insufficient to take the case to the jury on the issue of actionable negligence. A manufacturer may assume that his product will be devoted to its normal use. And if it is safe when devoted to the normal use for which it was manufactured, he is not liable in damages for injury resulting from an abnormal or un-usual use not reasonably anticipated. Marker v. Universal Oil Products Co., 10 Cir., 250 F.2d 603; Hentschel v. Baby Bathinette Corp., 2 Cir., 215 F.2d 102, certiorari denied 349 U.S. 923, 75 S.Ct. 663, 99 L.Ed. 1254; Lovejoy v. Minneapolis-Moline Power Implement Co., 248 Minn. 319, 79 N.W.2d 688; Eason v. Kelly Pipe Co., 16 Cal.App.2d 88, 60 P. 2d 488. Appellee manufactured the casements for use as window frames. The casements were designed and intended to support glass in windows. The glass was in panes about two feet by three feet in size. At all times since being installed, the casements have fulfilled in a satisfactory manner the purpose for which they were manufactured. And it is not suggested that they were unsafe when devoted to that purpose. But appellant seeks to hold appellee liable in damages for negligence in manufacturing a casement in such manner that it could not be used safely as a ladder by an employee weighing about one hundred and sixty or one hundred and seventy pounds while engaged in installing the casements in their position in the walls of the building. Manifestly, that was an entirely different use from that for which the casements were manufactured. It was pleaded in the complaint that at the time of the manufacture of the casements, appellee knew that workmen would have to use the cross-bars as handholds and supports in fitting and securing the casements in place. And there was testimony that it was common practice of iron and steel workmen to go up and down on casements because it was faster and cheaper for the contractor. But there was no showing at the trial that appellee had notice or knowledge that in installing these casements workmen would use the cross-bars as handholds or footrests. And there was no showing that it had knowledge of the practice of workmen in using the cross-bars on casements for handholds or footrests, or that the practice was so general that it was charged with knowledge thereof.

The judgment is affirmed.