## PHILLIPS PETROLEUM CO. et al. v. DAVIS et al.

No. 27831.     March 29, 1938.

Redmond S. Cole, Geo. W. Cunningham, Wm. Talbott, and R. E. Bogges, for plaintiffs in error.

T. J. Sargent and Irving D. Ross, for defendants in error.

RILEY, J. This is an action commenced by the defendants in error against the Phillips Petroleum Company and four other oil producing companies to recover damages to real property alleged to have been caused by the pollution of a stream known

as Big Beaver creek, which flows in a southerly direction along the east boundary of the land involved.

The parties will be referred to as plaintiffs and defendants, as in the trial court.

Plaintiffs claimed $220 damages because of loss of the usable value of said stream as a source of water supply for their livestock, and $2,700 damage to their land by reason of the pollution of three water wells.

Judgment was for the plaintiffs in the sum of $800, and defendants appeal.

Plaintiffs are the owners of about 95 acres in the northeast corner of the southeast quarter of section 35, and about 30 acres across the road therefrom in the southwest quarter of section 36, township 27 north, range 4 east, in Kay county.

Plaintiffs' land is roughly triangular in form. The Arkansas river forms the southwest boundary line, and Beaver creek forms the east boundary. Beaver creek empties into the Arkansas river at the southeast corner of plaintiffs' land. The strip of land owned by plaintiffs in the southwest quarter of 36 is something less than one-half mile in length, running north and south and about 350 or 400 feet wide at the north end.

Plaintiffs' house, barn, and other buildings are in the northeast corner of the southeast quarter, section 35. One of the three wells is located about 125 to 150 feet west of the west bank of Beaver creek in section 36, one across the road at the house, and one near the barn.

The defendants operate oil and gas producing leases within the watershed of Beaver creek some distance above plaintiffs' land. This oil field was developed before the year 1924. During the past years defendants have been producing salt water and other waste substances which have been permitted to flow into Beaver creek. On October 24, 1924, Herman Proctor and Annie Proctor, husband and wife, were the owners of the land now owned by plaintiffs. On that date they entered into what is termed an "easement and right-of-way" agreement with the Waite Phillips Company, and other oil companies, which in substance provided: That for the sum of $800, paid by the oil companies, Proctor acknowledged full payment of all damages then accrued or to accrue to Proctor's land by the pollution of the stream, etc., within a period of nine years thereafter, and agreed to

claim no other or further damages on account thereof during said nine years.

There was further provision that in case of sale or lease of said premises by Proctor, he would advise the purchaser or lessee fully as to the provisions of said agreement.

On April 1, 1929, Proctor and wife, by warranty deed, conveyed the land to plaintiff Lola Davis.

During all the time from October 24, 1924, down to 1934, defendant oil companies continued without complaint to drain salt water and base sediment and other waste matter from their oil wells into Beaver creek.

Plaintiffs in this present petition allege that:

"* * * Said defendants and each of them have brought to the surface of the ground large quantities of mineralized water commonly known as salt water, together with the base sediment, waste oil and other oil field products. That said defendants have caused and permitted during the operation of said leaseholds large quantities of said pollutive substances to escape into the natural drainage leading into said Big Beaver creek and they have intentionally disposed of said waste products chiefly by draining them directly into said natural drainage. * * *

"Plaintiffs further state that in the latter part of 1934. or the early part of 1935, the waters of the wells above mentioned became polluted with said poisonous substances from Big Beaver creek, placed therein by the defendants; that at first the pollution was only minor in degree. but as the months passed the degree of pollution increased till in about the month of June, 1935, the amount of pollution in said wells became so great that the waters were. wholly unfit for either human or livestock consumption and have remained so ever since and by reason thereof plaintiffs have been compelled to abandon the same and have had to haul water ever since for household purposes and livestock consumption. That by reason of the destruction of said wells the value of said lands have been diminished and plaintiffs have been damaged in the sum of $2,700."

Defendants demurred to plaintiffs' evidence. and renewed the demurrer at the close of all the evidence and moved for a directed verdict in their favor.

The sole contention made by defendants in this appeal is that the evidence in the case was wholly insufficient to justify the submission of the case to the jury. They contend that there was a total failure of proof to show that anything of a pollutive nature produced in the oil field operated by defendants found its way into the water wells of the plaintiffs.

There is no direct evidence tending to show that any "mineralized water," commonly known as salt water, "or any base sediment, waste oil, or other oil field products," found its way into plaintiffs' water wells, or that water in said wells contained any such substances in harmful quantities. There is no proof whatever that "base sediment or waste oil" from any source entered the wells or caused the alleged pollution. The controversy is then reduced to whether salt water caused the pollution, and if so, whether it entered plaintiffs' water wells from Beaver creek.

The evidence on the latter question is wholly circumstantial.

The evidence relied upon by plaintiffs is in substance: That the water in Beaver creek had been polluted from oil field waste, including salt water, and was unfit for use for stock water or domestic use since before 1924; that the water in plaintiffs' wells was pure and wholesome up until sometime in the spring of 1935. About that time the water in the three wells had a bad odor and when pumped from a well and allowed to stand over night the water would turn yellow or red; the water had a bad taste, "like creek water." Plaintiff James Davis testified that the water from his wells "tasted like creek water, like Beaver creek smelled." It was unfit for drinking purposes, or for "making coffee," or ordinary laundry purposes, in that for such use it was necessary to add a large amount of lye; livestock would hardly drink it. The stock preferred to drink the water from Arkansas river. Plaintiffs quit using the water for domestic purposes and thereafter hauled water for family use from a well in the town of Washunga, about one-half mile north, and hauled water for laundry use from a Carter well. To sum up such evidence it may be said to establish that the well water deteriorated in quality, but the cause of the deterioration is not established with any degree of certainty. It is well settled that a verdict may properly be predicated alone on circumstantial evidence, but it cannot be based upon mere conjecture. Patterson v. Seals, 51 Okla. 347, 151 P. 591.

The most that may be said of plaintiffs' evidence is that something got in the water

which gave it an offensive odor and destroyed its usefulness. What this substance was remains a conjecture. In order to sustain plaintiffs' claim it must be inferred from the evidence that this substance was "mineralized water commonly known as salt water" and oil field products. It must be further inferred that such mineralized water came from Beaver creek. So far as plaintiffs' evidence in chief goes, there is no proof whatever that water in their wells contained any salt whatever. Defendants, however, did not stand upon their demurrer to plaintiffs' evidence, but went forward with evidence which tended to show that there was some sodium chloride (common salt) in the water taken from the wells, but in quantity almost negligible, that is, 20 parts per million; that the water did contain soluble solide of a total amount of something over 600 parts per million, some of which was magnesium sulphate (Epsom salt), not enough in all above the 20 parts sodium chloride were magnesium sulphate (Epsom salt) to render the water harmful or make it unfit for domestic use.

The question, then, is whether the evidence as a whole was such that the jury might reasonably infer that the substance in the water which gave it the unpleasant odor was "mineralized water, commonly known as salt water," base sediment, oil, or some other unidentified poisonous matter, and also infer that such substance came from Beaver creek. There was no evidence whatever that the water contained base sediment or oil. There is likewise no evidence that the water in plaintiffs' wells contained salt, sodium chloride, and magnesium sulphate combined in sufficient quantity to render the water unfit for domestic use or for use as stock water. The only positive evidence is to the contrary. This leaves evidence only of some substance which gave the water an offensive odor and rendered it unpalatable. Clearly the substance was not "salt" (sodium chloride) or Epsom salts (magnesium sulphate), for the uncontradicted evidence is that these are odorless.

There is evidence that the water in plaintiffs' wells had the same odor as the water in Beaver creek. But it cannot with any degree of reason be said that the substance, whatever it was that gave the water the offensive odor and made it unpalatable, came into plaintiffs' wells with water from Beaver creek. The water in Beaver creek, under the uncontradicted evidence, was several hundred times as salty as the water in plaintiffs' wells. If water came into plaintiffs' wells from Beaver creek, it must of necessity have carried with it its salt content.

Under the uncontradicted evidence, the water in the well in Washunga, from which plaintiffs were obtaining water for domestic use, carried the same odor, though somewhat less pronounced, and carried almost identically the same salt content.

It is, therefore, just as reasonable to infer that the matter, whatever it was, which gave the water in plaintiffs' wells the offensive odor came from some surface pollution as it is to infer that it came from the water in Beaver creek.

The uncontradicted evidence is that the well under the porch of plaintiffs' residence had the greater degree of offensive odor. The uncontradicted evidence is that this well was unprotected by curb or other device from surface water; that the waste water from the kitchen sink was permitted to flow over the surface of the ground under the porch and around the well. The well at plaintiffs' barn was also unprotected from surface water flowing across the barnyard near the well.

The formation between the west bank of Beaver creek and plaintiffs' well nearest thereto, a space of 125 feet, had stood as an effective barrier against the percolation of the water from Beaver creek during the nine years effective period of the agreement between the former owner of the land and certain oil companies and for more than one year after it expired.

The jury, in order to sustain plaintiffs' claim, must have inferred that the barrier gave way and polluted water traveled in less than two years a distance of some 500 feet, or four times as far in two years as it failed to travel in the ten years following the settlement agreement in 1924. This may not be beyond the realm of possibility, but is speculative.

It is not within the province of this court to weigh direct evidence in an action at law, but herein plaintiffs are relying upon circumstantial evidence, and we have pointed out that under the admitted facts and uncontradicted evidence the circumstances are such as to render it as probable that the pollution shown to exist, whatever its cause, came from sources other than Beaver creek. The circumstances and

the uncontradicted evidence are such as to render it as probable that the matter causing the pollution is something other than that charged in the petition.

Under such circumstances, the verdict of the jury is considered as based upon conjecture and cannot be permitted to stand. Hepner v. Quapaw Gas Co., 92 Okla. 9, 217 P. 438; Pine v. Bowles, 179 Okla. 604, 66 P.2d 1077; Midco Oil Corp. v. Hull, 182 Okla. 21, 75 P.2d 1126.

The judgment is reversed and the cause is remanded for a new trial.

BAYLESS, V. C. J., and PHELPS, CORN, and DAVISON, JJ., concur.