**TAXICAB DRIVERS' LOCAL UNION NO.** 889, a voluntary association; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, a voluntary association; Gloyd Davidson, individually and as Business Representative of Taxicab Drivers' Local Union No. 889; and Joseph Maroof, individually and as President and member of the Executive Board of Taxicab Drivers' Local Union No. 889, Plaintiffs in Error,

v.

**L. C. CUNNINGHAM, Defendant in Error.**

No. 37019.

Supreme Court of Oklahoma.

Oct. 22, 1957.

Mullinax & Wells, by Houston Clinton, Jr., and L. N. D. Wells, Jr., Dallas, Tex., Schwoerke & Schwoerke, by C. W. Schwoerke, Oklahoma City, for plaintiffs in error.

Johnson, Gordon & Cotter, Everett E. Cotter, Oklahoma City, for defendant in error.

Clark Nichols, Roy L. Sullivan, Edward E. Soule, John H. Cantrell, V. P. Crowe, Oklahoma City, Floyd L. Rheam, Tulsa, amici curiæ

PER CURIAM.

This is one of a series of actions arising out of a controversy between members of a labor union. The facts out of which this action arose are more fully set forth in our opinion in case No. 37021, Taxicab Driver's Local Union No. 889, etc. v. Pittman, Okl., 322 P.2d 159. Inasmuch as the history of the controversy up to and including the filing of disciplinary charges in the Local Union against this plaintiff is identical with that in No. 37021 and Taxicab Drivers' Local Union No. 889, etc. v. Pittman, Okl., 322 P.2d 153, No. 37020, we will not repeat it here.

When disciplinary action was commenced against plaintiff in the Local Union, his case was set for trial before the trial board on the same day as the charges against the two Pittmans. As occurred in Taxicab Drivers' Local Union No. 889, etc. v. Pittman, No. 37021, the Union Trial Board heard the charge against H. H. Pittman and then refused to allow this plaintiff to produce witnesses in his own behalf or to cross-examine the witnesses used by the prosecution in the case against H. H. Pittman. The Union Trial Board concluded that the same evidence could be considered as the evidence in each case, even though each defendant was not given an opportunity to test its veracity or cross-examine the witnesses. Plaintiff was allowed to make a statement and to question the prosecuting witness, nothing more. Even though he admitted signing the defamatory communication, which was the basis of the union prosecution, this was not an admission of guilt of itself, and he was entitled to attempt to prove the truth of the matters contained in the letter and petition as well as produce evidence in mitigation or explanation of his actions. He was not given a fair hearing as is required by the Union Constitution and the rules of law. Johnson v. International of United Bros., 52 Nev. 400, 288 P. 170. The judgment of the union tribunal is void. Cason v. Glass Bottle Blowers Ass'n, 37 Cal.2d 134, 231 P.2d 6; Washington Local Lodge, etc. v. International Brotherhood, 33 Wash.2d 1, 203 P.2d 1019.

From this conclusion it necessarily follows that the plaintiff was entitled to reinstatement in the Union and any damage he may have suffered by reason of the action of these defendants in causing him to be suspended from employment, for a void judgment cannot justify the Union in causing his suspension from work. Taxicab Drivers' Local Union, No. 889, etc. v. Pittman, No. 37021.

After the imposition of the penalty by the Local Union, the plaintiff appealed to the International Union. He did not deposit the fine as is required by the Union Constitution pending the appeal, but he did continue to work without interference from the Union. Prior to the next dues paying date, the plaintiff discussed his union troubles with his employer. This conversation apparently occurred about December 28, 1952. In explaining his situation, the plaintiff informed his employer that he intended to pay his dues at the next regular dues paying date but that he did not

intend to pay the fine; that he didn't know if the Local Union would accept his dues without payment of the fine. He then asked his employer if "I could continue to work after the 1st." In reply to his inquiry, Cunningham related the following statement of his employer:

"* * * And he said, 'No,' that the first paragraph in the contract stated that you had to be in good standing with the union, 'so I can't let you work. But as soon as it is straightened out, you come on back and you will have the same standing as you had before.' * * *"

The contract of the Union with plaintiff's employer, to which reference was made, is what is commonly called a closed shop contract. It contains the following provision:

"All said employees shall come under the scope of this contract and must become and remain members in good standing in accordance with the laws of the Union, during the life of this agreement. Any such person who fails to comply with this section, shall be suspended from the services of the company, without pay, *upon written request from the officers of the Union,* * * *."

After his conversation with his employer, and at the next dues paying date, the plaintiff tendered the proper dues to the Union but refused to pay the fine contending that it had been waived by the International President pending his appeal. The fine had not been waived at that time. The tender of his monthly dues was refused unless he also paid the fine. Thereafter the plaintiff made no effort to return to work or to ask his employer if he could return to work. Instead, he secured other employment within two weeks. The only damage asserted by plaintiff in this action is his loss of wages for the two weeks between the time he refused to pay the fine and the time when he secured another job. There is no evidence in this record that in any manner tends to show that the defendants ever demanded that plaintiff's employer suspend him for his failure to be in good standing with the Union. The jury returned a verdict for plaintiff allowing him the actual damages for his two weeks loss of earnings and exemplary damages, and upon the verdict the trial court entered judgment after ordering a remittitur of one-half of the exemplary damages.

We are of the opinion that this judgment for damages cannot be sustained. So far as this record reveals the loss of employment by plaintiff was as a result of the gratuitous suspension of him by his employer, if not as a result of the plaintiff's own failure to return to work. It is possible to speculate that the Union officers would have eventually demanded compliance of the employer with the terms of the closed shop contract, but there is a total lack of evidence that they did. There is even some evidence in the record that when the officers eventually demanded suspension of the Pittmans, at least a week after they refused to pay their fines, they assigned as their reason the fact that plaintiff's employer had theretofore suspended plaintiff. If the defendants had caused the plaintiff's loss of earnings they would be liable, but here the loss resulted from the plaintiff's own failure to return to work or from his employer's erroneous conclusion that he could not work plaintiff, and should by his own action suspend plaintiff, if he was in trouble with the Union. Neither of these assumptions create any liability on the part of these defendants. The record does not support a conclusion that the defendants interfered with the plaintiff's employment. An interference by the defendants with plaintiff's right to dispose of his labor was the essence of the cause of action for damages. The burden was on plaintiff to establish this fact. Phillips Petroleum Co. v. Davis, 182 Okl. 397, 77 P.2d 1147; Midco Oil Corp. v. Hull, 182 Okl. 21, 75 P.2d 1126.

Judgment reversed.

WELCH, C. J., CORN, V. C. J., and HALLEY, JOHNSON, WILLIAMS, BLACKBIRD, JACKSON and CARLILE, JJ., concur.

The Court acknowledges the aid of the Supreme Court Commission in the preparation of this opinion. After a tentative opinion was there written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.