### DAVIS v. HIGGINS.

No. 13088—Opinion Filed April 3, 1923.

Rehearing Denied July 31, 1923.

(Syllabus.)

**1. Contracts—Presumptions—Fraud.**

Fraud is never presumed, and when a written contract is attacked on that ground, the contract will be upheld unless the allegations of fraud are established by clear and convincing evidence, and the fraud must be predicated upon existing facts, and cannot consist of mere promises as to future action.

**2. Release—Right to Set Aside for Fraud.**

Where a release for personal injuries has been executed, and the party executing the release seeks to set aside the same because of fraudulent representations, it must be shown that such representations were (1) material, (2) false, (3) known by the party making them to be false or that such party made them recklessly without any knowledge of their truth and as a positive assertion, (4) that they were made with the intention that they should be acted upon by the party to whom they were made, (5) that such party acted in reliance upon them, and (6) that he thereby suffered injury.

**3. Same—Ground of Mutual Mistake.**

A release may be set aside for mutual mistake, but in such case there must be mutual mistake of a past or present fact material to the agreement, and must not be a mistake in prophecy, opinion, or in belief relative to an uncertain event, such as probable developments from and permanency of a known injury.

**4. Same—Rescission for Fraud—Damages for Personal Injuries.**

A person who executes a release for a claim for damages for personal injuries received, and who acted deliberately and intelligently, cannot rescind it for fraudulent representations upon discovering that the injuries did not heal as rapidly as he supposed at the time of signing the release, even though the attending surgeon told him he would be all right in six months, where no fraud, deceit, or imposition was practiced upon him and the opinion of the surgeon was given in good faith.

**5. Same—Insufficiency of Evidence.**

Evidence examined, and held insufficient to show fraudulent representations in procuring release.

Error from District Court, Marshall County; Geo. S. March, Judge.

Action by J. C. Higgins against James C. Davis, agent provided for in the Transportation Act of 1920, for damages for personal injuries. Judgment for plaintiff, and defendant brings error. Reversed, and remanded, with directions.

C. O. Blake, W. R. Bleakmore, A. T. Boys, and W. F. Collins, for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter and A. G. Morrison, for defendant in error.

COCHRAN, J. Defendant in error, hereinafter referred to as plaintiff, commenced this action to recover damages for an injury sustained when he was thrown from a car, and while the plaintiff was employed as a brakeman by the plaintiff in error, hereinafter referred to as defendant.

The injury occurred on the 26th day of July, 1918, and the plaintiff sustained a fracture of both bones of the right leg just above the ankle. On the 24th day of April, 1919, the plaintiff made a settlement with the defendant and executed his written release and received from the defendant the sum of $5,250. On May 7, 1920, plaintiff filed a suit for recovery of damages against the defendant for such injury in the sum of $35,000. The defendant in its answer pleaded the settlement and release, and the plaintiff in his reply alleged that the release was obtained by fraud. The case was submitted to a jury and verdict returned for the plaintiff for $12,750, less the $5,250 which had previously been paid to the plaintiff. From this judgment, the defendant has appealed.

The only question which is necessary for us to consider is as to whether the evidence introduced was sufficient to render the written release invalid because of fraud in its procurement.

In Lusk v. White, 58 Okla. 773, 161 Pac. 541, the second paragraph of the syllabus is as follows:

"It is a well-settled rule that fraud is never presumed, and that, where a written contract is attacked on that ground, the contract will be upheld, unless the allegations of fraud are established by clear and convincing evidence, and the fraud must be predicated upon existing facts, and cannot consist of mere promises as to future action."

In the instant case, the plaintiff relies upon alleged false and fraudulent misrepresentations of the company's physicians and claim agent in procuring the execution of the release. In this connection, the material facts shown by the testimony are that the injury occurred on July 26, 1918; plaintiff was immediately placed under the care of the company's surgeons; thereafter, about the first of April, 1919, he testified that he had a conversation with Dr. Oderholt in which he told the doctor that the claim department had kept after him for a settlement and that he would like to be fair with them and if his leg was going to be all right he would settle with the company, and the doctor said: "Your leg will be all right inside of six months." He testified, also, that Lewis made practically the same statement and at about the same time. The testimony shows that the settlement was not made at that time, and that, the leg having failed to heal and some slivers of bone having worked through the skin, the plaintiff was taken to Chicago on

the 22nd day of April, 1919, to Dr. Plummer, a company surgeon. Dr. Plummer, upon making an examination, advised the plaintiff to see a bone specialist in Chicago and advised that he thought it would probably be necessary to break the bones of the leg again. Lewis was present at the time and offered to go with the plaintiff to see the specialist, but the plaintiff declined to go to see him and declined to have the leg rebroken, and, after declining to see the specialist, the plaintiff went to the claim agent and entered into the settlement agreement and received the sum of $5,250 and executed the release.

Between the day the plaintiff claims the misrepresentations were made by Drs. Oderholt and Lewis as to the extent of his injuries and the day of the execution of the release in Chicago, the plaintiff's attorney advised the defendant by letter, as follows:

"I had a talk with Mr. Higgins and he will not accept the offer you have made. Mr. Higgins feels that he has received a permanent injury and he ought to be paid a great deal more money than he has been offered."

In the release which was executed is the following provision:

"In making this settlement and executing the release, I rely solely on my own judgment and information, and do not rely on any statements of or representations as to the facts of the accident or of the character and extent of my injuries which may have been made to me by said Director General or by any of said railway companies, or by any of their officers, agents, employes, or physicians, respectively, or by any other persons, and I fully realize that my judgment as to the extent of my injuries, and all expressions of others with reference thereto, rest upon opinion only, and may be erroneous."

The only ground upon which the plaintiff seeks to invalidate the release is that the statements made by Drs. Oderholt and Lewis to the effect that he would be well within six months were false and fraudulent and were relied upon by the plaintiff and were the inducing cause of the plaintiff's signing the release, and that, instead of recovering within six months, he is permanently disabled.

The plaintiff relies upon the rule announced by this court in a decision by Collier, C., in C., R. I & P. Ry. Co. v. Burke, 73 Oklahoma, 175 Pac. 547, in which a very similar state of facts existed, and in which the following language is used:

"We are of the opinion that the positive statements made by Dr. Porter, the servant of the defendant, to the plaintiff were material, and that the plaintiff had a right to rely thereon in making settlement, and said representations being untrue in fact, even though the falsity was not known to the said surgeon and they were not made with intent to deceive the plaintiff, plaintiff had a right to rescind the settlement, as the statement of the surgeon of the company that the injuries were not permanent and he would entirely recover, upon which statement plaintiff relied, constituted constructive fraud; fraud in law."

The first paragraph of the syllabus is as follows:

"The settlement and release of a cause of action brought about by false representation of material facts on the part of a surgeon, the servant of the defendant, upon which plaintiff relied as to the injuries received by plaintiff, notwithstanding the falsity of said representations was unknown to the surgeon making them, may be rescinded and avoided, although there was no fraud or other wrongful intent to deceive or defraud."

Reference is made to Quapaw Mining Co. v. Cogburn, 78 Okla. 227, 190 Pac. 416, the third paragraph of the syllabus of which is as follows:

"Where the plaintiff in a personal injury case is induced to execute a release of damages by the false and fraudulent representations of a physician in the employment of the defendant, or sent to him by the defendant, that his injuries are but slight or temporary, the physician well knowing the contrary, the release will not be binding."

The last case correctly states the law relative to invalidating the release by reason of fraudulent misrepresentations. The rule announced in C., R. I. & P. Ry. Co. v. Burke, supra, is supported by many of the reported cases, but there is no reason why a release of this kind should be invalidated for fraudulent representation except for the same reasons any other written instrument would be. The confusion has probably arisen out of a confusion of the law relative to invalidating contracts because of mutual mistake with the law applicable in cases based on fraudulent representations. This court has repeatedly announced the essential elements of actionable fraud to be as follows: (1) That the representations were material, (2) that they were false, (3) that they were known by the party making them to be false or that such party made them recklessly without any knowledge of their truth and as a positive assertion, (4) that they were made with

the intention that they should be acted upon by the party to whom they were made, (5) that such party acted in reliance upon them, and (6) that he thereby suffered injury. Henry v. Collier, 69 Oklahoma, 169 Pac. 636; Cooper v. Gipson, 69 Oklahoma, 170 Pac. 220; King v. Howeth & Co., 42 Okla. 178, 140 Pac. 1182; Dozier v. Northrup, 89 Okla. 67, 213 Pac. 304.

In case of mutual mistake as to an existing fact, the release may also be set aside, and as to that we find the following statement in 34 Cyc. 1058:

"A release may, however, be avoided for a mutual mistake of a past or present fact, material to the agreement; but such an effect is not produced by a mistake in prophecy, or in opinion, or by mistake in belief relative to an uncertain future event, as, for instance, the probable developments from and permanency of a known injury."

In the instant case the plaintiff relied upon fraudulent representations to set aside the release, and therefore the law relative to mutual mistake is not applicable here. In order to hold the release invalid, it must appear that the representations were as to a material existing fact, and that such representations were either known to the maker to be false or were recklessly uttered regardless of their truth, and that the representations so made were relied on by the plaintiff to his injury. In Black on Rescission & Cancellation, sec. 391, we find the following:

"The generally accepted rule is that a person who executes a release of his claim for damages for personal injuries received, acting intelligently and deliberately, cannot afterwards rescind or repudiate it upon discovering that the injuries actually sustained were much more severe, lasting, or numerous than he had supposed at the time of signing the release, where no fraud, deceit, or imposition was practiced upon him, and the material opinions on which the estimate of the injury was based were given in good faith.

In Nason v. C., R. I. & P. Ry. Co. (Iowa) 118 N. W. 751, the court used the following language:

"When reduced to brief statement, the most that can be said of Dr. Jennings' connection with appellee's cause of action is that his assurance of an early recovery have proven incorrect; but, in the absence of some fact or circumstance justifying the conclusion that they were fraudulently made to deceive or mislead the injured man as to his real condition, and thus aid the appellant in obtaining an advantageous settlement with him, the fact that he relied thereon in executing the release affords no ground in law for avoiding its effect. We must not be understood as holding that expressions of professional opinion by a surgeon in the employment of a party charged with responsibility for a personal injury, when made to the injured person for the purpose of inducing a settlement of his claim for damages, may not constitute fraud and false representations, but we do hold that to justify the conclusion of fraud something more must be shown than that the opinion or representation has been proved incorrect, and this, we think, is the utmost of the showing made by the appellee."

In the instant case there was no proof whatever of any false representation of any existing fact. The character of the injury was known to the plaintiff as well as to the surgeons. There is no evidence tending to show that the opinions of Drs. Oderholt and Lewis were not the existing opinions of these surgeons, entertained by them in good faith. The statements were made nearly a year after the injury had been sustained, and although he says he relied on these statements, he had been given an opinion by another surgeon at Chicago who advised him of the permanency of the injury prior to the time the settlement was made. In view of this condition of the record, there is not sufficient evidence to sustain the verdict of the jury, which in effect held invalid the release on the ground of fraud.

The judgment of the trial court is reversed, and cause remanded, with directions to enter judgment for the defendant.

JOHNSON, C. J., and KANE, KENNAMER, and NICHOLSON, JJ., concur.