## CHICAGO, R. I. & P. RY. CO. v. PERKINS.

No. 15600—Opinion Filed Oct. 6. 1925.

Rehearing Denied Dec. 22, 1925.

### 1. Negligence—Essential Elements.

To constitute actionable negligence, where the wrong is not willful and intentional, three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure.

### 2. Same—Question for Jury—Failure of Proof.

Under section 6 of article 23 of the Constitution (section 355, Williams' Ann. Const. Okla.), the question of contributory negligence or assumption of risk in all cases is a question of fact at all times to be left to the jury, but this provision does not relieve the party suing for damages for an alleged injury from the burden of proving that the injury was the proximate result of negligence on the part of the party sought to be charged.

(a) Where there is no evidence reasonably tending to show that such party sought to be charged was guilty of negligence, it is error for the trial court to submit such issue to the jury.

### 3. Same—Demurrer to Evidence—Direction of Verdict.

A demurrer admits the truth of all the evidence introduced and of all the facts which it tends to establish, as well as every fair and reasonable inference, and should be overruled unless the evidence and inferences which a jury could reasonably draw from it are insufficient to support a verdict for plaintiff. But where the evidence fails entirely to show primary negligence, the court should sustain the demurrer and instruct a verdict in favor of the defendant.

### 4. Release — Fraud — Validity Though Injuries Did not Heal as Soon as Expected.

A person who executes a release for a claim for damages for personal injuries received, and who acted deliberately and intelligently, cannot rescind it for fraudulent representations upon discovering that the injuries did not heal as rapidly as he supposed at the time of signing the release, even though the attending surgeon told him he would be all right in a short time, where no fraud, deceit, or imposition was practiced upon him, and the opinion of the surgeon was given in good faith.

### 5. Same—Rescission for Mutual Mistake— Necessity for Mistake of Fact.

A release may be set aside for mutual mistake; but in such case there must be mutual mistake of a past or present fact material to the agreement, and must not be a mistake in prophecy, opinion, or in belief relative to an uncertain event, such as probable developments from and permanency of a known injury.

### 6. Contracts—Fraud to Overturn—Predication on Existing Facts—Proof.

Fraud is never presumed, and, when a written contract is attacked on that ground, the contract will be upheld unless the allegations of fraud are established by clear and convincing evidence, and the fraud must be predicated upon existing facts, and cannot consist of mere promises as to future action.

### 7. Release—Fraudulent Procurement—Evidence Insufficient.

Evidence examined, and held, insufficient to show fraudulent representations in procuring release in this case.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Beckham County; T. P. Clay, Judge.

Action by John Embre Perkins against the Chicago, Rock Island & Pacific Railway Company. Judgment for the plaintiff, and defendant brings error. Reversed.

C. O. Blake, A. T. Boys, W. R. Bleakmore, and W. F. Collins, for plaintiff in error.

Ledbetter, Stuart, Bell & Ledbetter and A. G. Morrison, for defendant in error.

Opinion by MAXEY, C. This is an action by John Embre Perkins, as plaintiff, against the Chicago, Rock Island & Pacific Railway Company, a corporation, as defendant, to recover damages sustained by the plaintiff on the 29th day of October, 1921, caused by the plaintiff, Perkins, falling into a turntable pit at Waurika, Okla., one of the stations on the defendant's railway, by reason of which the said Perkins injured his wrist. The negligence charged to the defendant railway company is stated in the 3rd paragraph of plaintiff's first cause of action:

"Third. That on the night of the 29th

day of October, 1921, while plaintiff was employed by the defendant in its shops and round house at the said station of Waurika, and while he was in the exercise of due precaution for his own safety, he was seriously injured by reason of the negligence of the said defendant; that in the said yards and for the purpose of conveying engines to the different stalls of the said round house, there was a turntable pit, some three or four feet in depth and some 35 or 40 feet in diameter; that there were no balustrades, or safeguards to prevent one from falling into the said pit; that it was the duty of the defendant, under the circumstances, to have lights over or around the said turntable pit so that the plaintiff or others in the employ of the defendant could see and prevent falling into the same; that defendant wholly disregarded its duty to furnish the said lights or to furnish the plaintiff with any kind of light by which he could see where he was walking, and that by reason of said negligence on the part of the defendant, the plaintiff walked and fell into the said turntable pit, falling upon his left wrist with such force and violence that it was broken; that his said wrist and hand became permanently weakened by reason of the injury, and plaintiff's earning power was greatly reduced thereby; that he suffered great pain on account of same; that he will suffer pain in the future by reason thereof; that at said time plaintiff was a strong healthy man, 41 years of age, and was capable of earning and was earning $150 per month."

There was a second cause of action included in plaintiff's petition for a second injury that plaintiff had on the 10th day of June, 1922, whereby he injured the same wrist while working with a wheelbarrow, but a demurrer to the evidence to this cause of action was sustained by the court, and that part of the plaintiff's case is not before this court.

In the answer of the defendant, it is alleged that the injury was caused by the negligence of the plaintiff, which directly and proximately contributed to such injury, and that at such time plaintiff was engaged in interstate commerce.

In the fourth paragraph of the answer, the defendant alleges, as a defense to plaintiff's first cause of action, that after said injury set out in the first cause of action, above quoted, the plaintiff, Perkins, made a claim against the defendant for the damages sustained as set out in the first cause of action, and in order to avoid litigation, the defendant railway and plaintiff compromised and settled all claims arising out of said accident, for which plaintiff claimed defendant was liable, in the sum of $350, and the defendant paid to the plaintiff said sum of

$350, and in consideration of the payment of said sum, the plaintiff released defendant from all liability whatsoever resulting from the injury he claimed to have sustained by said accident, and took a written release from the plaintiff, Perkins, for all damages caused by said injury.

The plaintiff filed a reply to said answer, in which he set up that said release and settlement was obtained by fraud and misrepresentation, and was therefore void, and tendered back the $350 received by him. With the reply on these issues, the case went to trial, and plaintiff testified in his own behalf that he had been employed by the defendant four or five years at Waurika on defendant's line, and that on the night of October 29, 1921, while attending to his duty, he fell into the turntable pit and broke his left wrist; that his duties were that of watching the engines, that there were engines on the south side of said pit and near the round house, and that in passing around said turntable pit, he got nearer the pit than he thought he was, and fell in the pit. There were lights on the turntable near the center and plaintiff was carrying a lantern in his hand at the time he walked into the pit. It is contended by the plaintiff that the defendant should have had a balustrade around said pit, and should have had it lighted up so that one passing around could see the pit and avoid falling into it.

In answer to this contention, the defendant claimed that said turntable was lighted up in the manner that other railroads lighted their turntables, and that the railway company furnished the plaintiff with a lantern to light his way around said turntable and through the yards, and that the falling into said turntable pit was caused by the plaintiff failing to look around and see where he was going. There was no one who saw the accident. The plaintiff got out of the pit and went into the round house and reported the accident.

In regard to the settlement, the plaintiff stated that he relied on what Dr. Maupin told him about the condition of his wrist, and how soon he would be able to go to work; that Dr. Maupin stated that it would be all right in a short time and for him to work the fingers, which had become somewhat stiff, and that the more he worked them, the sooner they would get all right; that he then went to El Reno, the general office of the company, and saw Mr. Chastain, the claim agent, about settlement; that Chastain told him at first that he did not think the company would pay him anything, and

that he thought they ought to, and that he was entitled to $500; that Chastain then called up over the telephone Dr. Aderhold or Dr. Brown, and after he talked with them. Mr. Chastain said: "The doctor thinks your wrist will be all right in a short time"; and that after some talk Mr. Chastain agreed to pay him $350 in full settlement of his claim, and he agreed to accept it, and did accept it and sign the release. This was all of the testimony in regard to settlement by the doctors or employes of the railway company at the time he made the settlement. At the close of plaintiff's testimony, the defendant demurred to the evidence offered in support of the first cause of action, that is, the first injury, on the ground that there was no primary negligence shown on the part of the defendant railway, and that the evidence of fraud in the procurement of settlement on the part of the railway company was wholly insufficient to sustain an action to set aside and rescind said settlement. The court overruled this motion, as to the first cause of action, and the defendant excepted and then demurred to the evidence in support of the second cause of action set up in the petition, which was for damages for the second injury received on June 10, 1922, and the court sustained the demurrer to the evidence as to the second cause of action, and while defendant, plaintiff in error, and the defendant in error have devoted a great deal of their briefs to the second cause of action, it is conceded in the brief of both parties that that part of the case was eliminated by the court sustaining demurrer to the evidence on that cause of action. We agree with counsel for both parties, that sustaining the demurrer to the second cause of action eliminated that part of plaintiff's case from further consideration, and as there is no cross-error, it is unnecessary to notice that cause of action further. So that the case now stands on two propositions: First, was there any primary negligence shown on the part of the defendant railway company? and second, was the evidence of fraud in the procurement of the settlement sufficient to warrant the setting aside and rescission of the settlement? We will take these two propositions up in their order.

This court has, in a long line of cases, held that to constitute actionable negligence three essential elements are necessary: First. The existence of a duty on the part of the defendant to protect the plaintiff from injury. Second. The failure of the defendant to perform that duty. Third. Injury to the plaintiff resulting from such failure. This formula is taken from the case of C., R. I. & P. Ry. Co. v. Duran, 38 Okla. 719, 134 Pac. 876, and has been followed in other cases from this court: C., R. I. & P. Ry. Co. v. McIntire, 29 Okla. 797, 119 Pac. 1008; Rogers v. C., R. I. & P. Ry. Co., 32 Okla. 109, 120 Pac. 1093; Faurot v. Oklahoma Wholesale Grocery Co., 21 Okla. 104, 95 Pac. 463; C., R. I. & P. Ry. Co. v. Brazell, 40 Okla. 460, 138 Pac. 794; Kansas City S. Ry. Co. v. Langley, 62 Okla. 49, 160 Pac. 451; Gypsy Oil Co. v. Ginn, 88 Okla. 99, 212 Pac. 314; Phillips v. Classen, 93 Okla. 82, 219 Pac. 708.

In many of the foregoing cases it has been held, that where the petition and the evidence both fail to allege and prove any one of the elements of actionable negligence, it is a question of law for the court, and that the court should direct a verdict for the defendant.

In the case of the C., R. I. & P. Ry. Co. v. Duran, supra, the court says:

"Where there is no evidence reasonably tending to show that such party sought to be charged was guilty of negligence, it is error for the trial court to submit such issue to the jury."

And further on in the opinion of the same case, the court says:

"An agent of C. at L. advised D. that he could procure employment as a bridge carpenter from C. at a certain point, to wit, S. D. had had experience both as a bridge carpenter and section hand. D. shipped his trunk, containing his carpenter tools and carpenter credential certificates, to S., expecting to there enter the employment of C. as a bridge carpenter. On reaching S., his trunk not having arrived, he engaged in the service of C., as a section hand, and whilst engaged in such work, in construction of ballast on such road, by a piece of ballast rock striking him in the eye, he was injured. Held, that the injury was not the proximate result of the failure of C. to promptly deliver D.'s trunk at S."

And in discussing the assumption of risk and when it is a matter of law, the court says:

"The fact that the track had been washed out by recent floods and the roadbed was thereby put in a dilapidated condition could not be the proximate cause of a piece of limestone, or other ballast rock, flying into the eye of the plaintiff on account of being tamped with a pick or such appropriate tool. The flying of such rock or ballast material into the eye obviously was an accident and a danger incident to the employment, which as a matter of law was assumed by the plaintiff."

In the case of Midland Valley R. Co. v.

Graney, 77 Okla. 54, 185 Pac. 1088, a brakeman alighted from a caboose to close a gate that was maintained by the railroad company, and while walking briskly along the right of way, stepped on a clinker and fell, and the train ran over his hand and wrist, necessitating the amputation of his arm. The law on primary negligence is laid down in this case as follows:

"A demurrer admits the truth of all the evidence introduced and of all the facts which it tends to establish, as well as every fair and reasonable inference, and should be overruled unless the evidence and all inferences which a jury could reasonably draw from it are insufficient to support a verdict for plaintiff. But where the evidence fails entirely to show primary negligence, the court should sustain the demurrer and instruct a verdict in favor of the defendant."

In the case of Gypsy Oil Company v. Ginn, 88 Okla. 99, 212 Pac. 314, the court lays down the law as follows: When the plaintiff was being examined as to how the accident occurred, he stated that his lantern was burning at the time he fell, that he did not stumble over anything, but just walked into the pit, that he could have avoided falling into the pit if he had gone around some coaches, or he could have walked closer to the coach and not got into the pit, but he thought he was further away from it than he was; that the cars were located close to the pit and he knew the pit was there. He had been walking around this pit for four or five years and was perfectly familiar with where the pit was, and the only excuse he gives for falling into the pit was that he thought he was walking farther away from the pit than he was.

It is contended by counsel for plaintiff that there should have been a balustrade around the pit and that there should have been more lights to light up around the pit. But it seems from the testimony of several witnesses that this turntable was constructed and operated just like the turntable of other roads; that none of them, so far as witnesses knew, had balustrade around the pits. The fact is, that the turntable has to be revolved on the axis first one way and then another in turning the engines, and it is necessary that it be unobstructed. There have been so many cases of this character in the courts that it is not hard to find expressions from some case that will fit into most any theory that a person wants to make.

A recent case is the case of Turner v. Durant Cotton Oil Co., 96 Okla. 31, 219 Pac. 892, where the court says:

"A demurrer admits the truth of all the evidence introduced and of all the facts which it tends to establish, as well as every fair and reasonable inference, and should be overruled, unless the evidence and all inferences which a jury could reasonably draw from it are insufficient to support a verdict for plaintiff. But where the evidence in an action for personal injuries fails entirely to show primary negligence, the court should sustain the demurrer and instruct a verdict in favor of the defendant. The owner of premises has the right to place on them such buildings and improvements as are necessary to carry on any legitimate business in which such owner is entitled to engage, and he is under no duty to exercise care to make them safe for the use of others, even children, coming thereon without invitation, authority, or allurement."

In the case of O'Neal v. Vie, 94 Okla. 68, 220 Pac. 853, the court says:

"The mere fact that the servant received injury does not establish, even prima facie, the negligence or breach of duty of the master. Whether or not a defendant is guilty of negligence depends upon the question of whether he exercised reasonable care under the circumstances existing at the time, not whether he had done everything which it was possible to do in the light of every possible danger that might arise. For accidental injuries, or such as occur without any act of negligence on the part of the master, the master is not liable to the injured servant. There must be causal connection between the negligence averred and the injury received to entitle a plaintiff to recover. The rule of law making it the duty of the master to use ordinary care to furnish and maintain a reasonably safe place for the servant in which to perform his work has no application to a situation where from the nature of the employment, the object of the work is to make an unsafe place safe, and does not render the master responsible for dangers which necessarily inhere in the work and are only to be guarded against by the care of the servant himself in its performance."

The case of Hines v. Pershin, 89 Okla. 297, 215 Pac. 599, is a case where the janitor of a railway working in the switch yards received an injury, and the facts are very much like the instant case, and it is there held that the evidence totally fails to constitute any cause of action.

We are inclined to the opinion that there was no actionable negligence in this case, but before deciding the case we will take up the question of whether or not there was any evidence of fraud in obtaining the release in this case. The accident occurred on October 29, 1921, by which the wrist of plaintiff was broken by falling in the turn-

table pit. Plaintiff went to El Reno and had an X-ray picture taken on December 6th; thereafter he came to El Reno from Waurika and made a settlement with the railway company on January 23, 1922. At the time this settlement was made, he executed a release before C. G. Wattson, a notary public, in the presence of Hatch and Chastain, and a formal acknowledgment was taken by the notary public to this release, and in the release are the following paragraphs:

"I further represent and covenant that at the time of receiving said payment and signing and sealing this release, I am of lawful age and legally competent to execute it, and that before signing and sealing it I have fully informed myself of its contents and execute it with full knowledge thereof.

"(Read this release.)

"I understand that I can make no further claims against the railway company, even though my injuries are more serious or different than I know or understand them to be."

And in this release is this further statement, in which he says:

"He says he is not relying on the opinions of the doctors as to how long he will be disabled; that his fingers are still stiff and that they may be permanently so and he may be a cripple the rest of his life—knowing this, I have agreed to settle for $350."

He returned to work the latter part of March or April, and worked at his job until June 10, 1922, when he injured his wrist the second time. The statement of Dr. Maupin, that he told him his wrist would be all right in a short time and advised him to work the fingers, that the more he worked them the sooner it would get well, and the statement of Mr. Chastain that either Dr. Aderhold or Dr. Brown stated to him over the telephone that he thought the wrist would be all right in a short time, are not such statements as will justify the court to set aside the settlement on the ground of fraud.

This court has, in a very recent case, settled the law in a case of this kind by the case of Davis v. Higgins, 95 Okla. 32, 217 Pac. 193, where the court used the following language:

"Fraud is never presumed, and, when a written contract is attacked on that ground, the contract will be upheld unless the allegations of fraud are established by clear and convincing evidence, and the fraud must be predicated upon existing facts, and cannot consist of mere promises as to future action."

"A release may be set aside for mutual mistake; but in such case, there must be mutual mistake of a past or present fact material to the agreement, and must not be a mistake in prophecy, opinion, or in belief relative to an uncertain event such as probable developments from and permanency of a known injury."

"A person who executes a release for a claim for damages for personal injuries received, and who acted deliberately and intelligently, cannot rescind it for fraudulent representations upon discovering that the injuries did not heal as rapidly as he supposed at the time of signing the release, even though the attending surgeon told him he would be all right in six months, where no fraud, deceit, or imposition was practiced upon him, and the opinion of the surgeon was given in good faith."

"Evidence examined, and held insufficient to show fraudulent representations in procuring release."

In the case just cited, the plaintiff was an employe of the Director General, and he relied on various representations of the doctors to set aside a release. The facts, as claimed by the plaintiff and as stated in the opinion, are that the plaintiff had a conversation with Dr. Oderholt, in which he told the doctor that the claim department had been after him for a settlement, and that he would like to be fair with them, and if the leg was going to be all right he would settle with the company, and the doctor said: "Your leg will be all right inside of six months", and that Lewis, another employe of the company, made practically the same statement about the same time.

There is not any evidence that even tends to show that the statement of Dr. Maupin and Aderhold, or Brown, or Chastain were falsely made; what they said was simply their opinion, and there is no bad faith shown. The doctor said that where a joint was broken, as in this case, and the fingers become stiffened, and that it was discovered that the patient had pyorrhea and bad teeth, that those things always affect the injured part, and that they advised Perkins, the plaintiff, to have his teeth extracted, but he declined to do so.

We are clearly of the opinion that the evidence of fraud in procuring the release is wholly insufficient to justify the court in setting aside the release and submitting the case to the jury, and with the doubtful character of the evidence on the question of primary negligence, it was the duty of the court to have directed a verdict for the defendant, and for that error, the case is

reversed and remanded to the trial court, with direction to dismiss the action.

By the Court: It is so ordered.

Note.—See under (1) 29 Cyc. pp. 419, 420; 20 R. C. L. p. 11; 3 R. C. L. Supp. p.1015; 4 R. C. L. Supp. p. 1324; 5 R. C. L. Supp. p. 1074. (2) 29 Cyc. pp. 600, 627, 640. (3) 29 Cyc. p. 627 (Anno); 38 Cyc. pp. 1543. 1548. (4) 34 Cyc. p. 1061; anno. L. R. A. 1916B, 781; 23 R. C. L. p. 392; 3 R. C. L. Supp. p. 1326. (5) 34 Cyc. p. 1058; anno. L. R. A. 1916B, 776; 23 R. C. L. 390, 391; 4 R. C. L. Supp. p. 1502. (6) 13 C. J. pp. 386, § 285, 778, § 979; 22 C. J. p. 147, § 82; 27 C. J. p. 44, § 170; 34 Cyc. p. 1061. (7) 34 Cyc. p. 984.