## TULSA CITY LINES, Inc., v. MAINS.

### No. 1843.

Circuit Court of Appeals, Tenth Circuit.

Nov. 8, 1939.

378

Truman B. Rucker, of Oklahoma City, Okl. (Clayton B. Pierce and A. M. Covington, both of Oklahoma City, Okl., on the brief), for appellant.

Jno. L. Ward, of Tulsa, Okl. (L. A. Justus, Jr. and John L. Ward, Jr., both of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

May Mains instituted this suit against Tulsa City Lines, Inc., hereinafter called the company, and Doyle Layton, to recover damages for personal injuries alleged to have been sustained as the result of negligence in the operation on a street in Tulsa, Oklahoma, of a bus owned by the company, on which plaintiff was a passenger for hire. Layton was not served with process. By answer, the company pleaded unavoidable accident, contributory negligence, and compromise, settlement, and written release of liability. By reply, plaintiff admitted the execution of the written instrument of release but alleged that it was void for fraud and mutual mistake of material fact. Trial by jury was waived and the cause submitted to the court.

There was evidence tending to establish these facts. Plaintiff was forty-eight years of age and in sound health. She was active in community affairs, and conducted a nursery under the direction of the Children's Service Bureau from which she derived an income of about $50 per month. Due to the manner in which the bus was operated, she was thrown violently to the floor and rendered unconscious for a short time. As she left the bus, the operator told her that Dr. Glass was the company doctor, for her to go to him and he would take care of her at the expense of the company. She called the doctor the next day. He came to the residence to see her, and told her that she should come to his office in order that some X-rays could be taken and a thorough examination made. She went to his office the following day, an X-ray examination of her head was made, a thorough physical examination was conducted, and the findings were noted by a secretary. The doctor gave her some tablets to be taken at home, and told her to go to bed and be quiet. He further told her that her injuries were not serious, that they were trivial in nature, that her condition was mild, and that she would be all right in a few days. She employed an attorney on the same day. The next day, she encountered difficulty in contacting Dr. Glass and her attorney sent Dr. McKenzie to see her. He also had Dr. Pittman examine her. Dr. Glass made a report in writing of his findings, addressed to the insurance company which indemnified the bus company. After reviewing the history given him, and the conditions which he found, he stated in summary that in his opinion she had a mild concussion and that her injuries were not of a permanent nature. Dr. McKenzie made a written report, addressed to the claim adjuster for the bus company and the insurance company. He stated that her injuries could be analyzed as consisting of two factors, concussion and local injury; that he believed she would recover completely in several weeks; that she might be susceptible to headaches for several months following too much sun; and that complete rest, freedom from responsibility, and sedatives for four to six weeks were the treatment. Dr. Pittman made a written report, likewise addressed to the claim adjuster. It was limited to her ears and eyes. It stated in summary that all findings were negative, except a contusion on the left side of the head behind the ear. Her attorney demanded $3,000 for settlement, and stated that according to the report of the company doctor plaintiff's nervous switchboard —the brain—had been jostled and that her condition was serious. After such demand had been made, Dr. Glass and Dr. McKenzie advised the attorney that the condition of plaintiff was inconsequential, and that she would be all right in a few weeks or months at the outside if she would go to the country. The attorney then told plaintiff that since the doctors said that was her condition, the best he could do would be a few hundred dollars, and that she might just as well settle. Moved by the statements of the doctors, he then reduced the offer to $400. He was not present when the settlement was finally effected, but he told an associate to effect a compromise if an agreement as to amount could be reached with the adjuster. The amount of $250 was agreed upon about three weeks after the accident. Upon the agreement being reached, the claim adjuster prepared a release and three drafts in his office. One draft for $20 was payable to plaintiff, her husband, the attorney, and Dr. Glass; another for like amount was payable to plaintiff, her husband, the attorney, and Dr. McKenzie; and the third for $210 was payable to plaintiff, her husband, and the attorney. The adjuster then took the release and drafts to the office of the attorney. Plaintiff and her husband were there. The written reports of the three doctors were there and the associate of the attorney read them to plaintiff before the settlement was finally made. The release was also read to her, and she and her husband signed it. It recites that it releases the company of any

and all actions, causes or actions, claims, demands, damages, costs, loss of services, expenses and compensation on account of, or growing out of any and all known and unknown personal injuries resulting from the accident; and it further recites that plaintiff and her husband declared and represented that the injuries sustained were permanent and progressive, that recovery therefrom was uncertain and indefinite, that it was understood and agreed that they relied wholly upon their own judgment, belief, and knowledge of the nature, extent and duration of such injuries; and that they had not been influenced to any extent by any statement or representation made by a physician or surgeon employed by the company. Plaintiff went to the country and rested, but she did not recover. Instead, she became worse. At the time of the trial her left arm, side, and limb were numb, she showed some paralysis of the muscles of the throat, her muscles were weak, she lacked co-ordination, she overreached or underreached things, she fell frequently, she often fell against the side of the door when passing through it, she had a tenderness in the mastoid and scalp region, she suffered pain in the head, back and hips, she could read only large print, and she had a peculiar expression of the eyes which indicated mental abnormality. It was the opinion of a doctor who examined her a few days before the trial that in addition to the concussion, there was a contusion or laceration of the brain cells, and pressure on the brain. Plaintiff believed and relied upon the statement of Dr. Glass that her injuries were minor and trivial.

The court found, among other things, that at the time of the execution of the release all parties were mutually mistaken as to the nature, character, and extent of plaintiff's injuries; that they thought such injuries were mild and inconsequential; but that in fact they were serious, more serious than was thought by the parties. Plaintiff was awarded judgment for $2,750, less the $250 paid on the execution of the release. The company appealed.

■ It is urged that the court was not authorized as a matter of law to set aside the release on the ground of mutual mistake. The question must be determined by the law of the State of Oklahoma. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290.

■ The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims. But it is well settled in Oklahoma that a release of liability may be set aside if its execution was induced or brought about by fraudulent statements or representations of the physician of the defendant in respect to the extent of the injuries and the condition of the plaintiff. However, the fraud must be predicated upon existing facts; it cannot consist of statements which are essentially mere promises or forecasts of future developments or conditions; and it must be established by clear and convincing evidence. Where the ground of attack is solely and exclusively fraud and no question of mutual mistake is involved, evidence that the physician of the defendant made the positive statement to plaintiff that his injuries were slight and temporary and that he would recover within a short time, or where the claim adjuster of the defendant stated to plaintiff that the physician had made such a statement, is not enough to warrant the setting aside of the release even though plaintiff relied upon it, if its falsity was unknown to the physician making it. It must be shown that the statement was either known to be false by the person making it, or was recklessly made in disregard of its truth with intent to deceive plaintiff, and that plaintiff relied and acted upon it. Chicago, R. I. & P. Ry. Co. v. Burke, 73 Okl. 258, 175 P. 547; Midland Valley R. Co. v. Clark, 78 Okl. 121, 189 P. 184; Davis v. Higgins, 95 Okl. 32, 217 P. 193; Chicago, R. I. & P. Ry. Co. v. Perkins, 115 Okl. 233, 242 P. 535.

■ The attack on this release which the trial court sustained was that of mutual mistake. It is equally well settled law in Oklahoma that a release may be voided for mutual mistake of a past or present fact, material to the agreement; but it will not be set aside where the mistake is one of prophecy or opinion respecting the probable future developments or permanency of a known injury. When a release is challenged for mutual mistake, evidence clearly and convincingly establishing an innocent misrepresentation by a physician of the defendant in respect to the extent of the injuries sustained by plaintiff or the existing condition of plaintiff, made with intent that it be acted upon, and is relied upon by him, warrants cancellation of the instrument. Bad faith on the part of the physician is not an essential element. Chicago, R. I. & P.

Ry. Co. v. Rogers, 60 Okl. 249, 159 P. 1132; Davis v. Higgins, supra; St. Louis-San Francisco Ry. Co. v. Cauthen, 112 Okl. 256, 241 P. 188, 48 A.L.R. 1447; Beatrice Creamery Co. v. Goldman, 175 Okl. 300, 52 P.2d 1033; K. C. Motor Co. v. Miller, Okl.Sup., 90 P.2d 433. See Pickering Lumber Co. v. Campbell, 147 Okl. 158, 295 P. 596. In cases of this kind it is sometimes difficult, if not impossible, to draw a distinct line of separation between mistakes relating to present and future facts. Here the statements of the physicians made to the injured woman were in composite that her injury consisted of a slight concussion, that it was slight, inconsequential and trivial, that rest was the remedy, and that she would recover in a few weeks. They were more than a prophecy. They were statements of the extent of the injury which she had sustained and of her then present condition. They were statements in respect to that which had happened, and an opinion in respect to that which would follow as the result. They were both a statement of a present fact and a prophecy as to the outcome. They were doubtless made in good faith, but the evidence leaves little room for doubt that the physicians were gravely mistaken as to the extent of the injuries which plaintiff had sustained and as to her then present condition. And the evidence likewise affords slight room for doubt that both parties relied upon such statements, and that the settlement and release were induced and brought about by them.

It is urged, however, that this release is not limited to injuries which were known at the time, that it covers and includes all claims for damages for injuries known and unknown at the time the settlement was made. The instrument does recite that it releases the company from any and all claims for all known and unknown injuries, but similar releases have been voided for mutual mistake of fact. In Smith v. Kansas City, 102 Kan. 518, 171 P. 9, the instrument recited that it released and discharged defendant of all claims and demands, past, present, and future; in Rider v. Kansas City Terminal Ry. Co., 112 Kan. 765, 212 P. 678, it recited that it released and discharged the defendant from any and all liability for all claims for all injuries, including those which might thereafter develop, as well as those which were then apparent; in Hudgins v. Standard Oil Co. of California, 136 Cal.App. 44, 28 P.2d 433, it recited that it extended to all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected; and in Southwest Pump & Machinery Co. v. Jones, 8 Cir., 87 F.2d 879, it expressly included all claims and causes of action which the releaser then had or thereafter might have on account of the injuries sustained. Still in each of those cases the release was cancelled for the reason that it was predicated upon mutual mistake of fact. But that is not all. The Supreme Court of Oklahoma has had occasion to deal with the question. The release under consideration in Beatrice Creamery Co. v. Goldman, supra, was sufficiently broad in language to include and cover both known and unknown injuries. It was attacked only on the ground of fraud, no question of mutual mistake being involved. It was held that the evidence was not sufficient to sustain the allegations of fraud, but the court took occasion to say [175 Okl. 300, 52 P.2d 1037]: "The contract of release was broad enough in its terms to include every injury, known or unknown, suffered by plaintiff as a result of the accident. If plaintiff's injuries were unknown or misunderstood by both parties, then it may be said that the contract was voidable on the ground of mutual mistake, had plaintiff sought to avoid the release on that ground." In K. C. Motor Co. v. Miller, supra, the release was cancelled on the ground of mutual mistake. The court quoted with approval the third paragraph of the syllabus in St. Louis-San Francisco Ry. Co. v. Cauthen, as follows [90 P.2d 435]: "Mutual mistake of fact should justify the rescission of a release, executed under the belief that injuries are trivial and temporary, when as a matter of fact they are serious and permanent in their nature, where it appears that the purpose of the release was to compensate for apparent injuries, known injuries, and that serious or permanent injuries were not contemplated by the parties at the time of the execution of the agreement or release, although in its terms the agreement or release is broad enough to cover all injuries, resulting from the particular incident."

Despite the scope of the language contained in the release, the nominal amount offered and finally agreed upon indicates clearly that all parties did not intend that the settlement should cover serious injuries which would be permanent in duration. The trifling consideration proposed and accepted argues strongly that grave injuries which would disable plaintiff for the re-

mainder of her life were not included. The facts repel the suggestion that the company intended to pay plaintiff the mere pittance of $250 for absolution of liability for an existing injury of the kind and character it now appears to have been. And it is inconceivable that plaintiff understood she was accepting that grossly inadequate amount for injuries which it later became known were serious and permanent. The release was plainly induced by mutual mistake as to material present facts and conditions. The rationale of the situation is that the settlement was intended to cover injuries then known to the parties, not serious injuries of a permanent nature not then known.

 The further contention is that plaintiff cannot rely on the representations of the agents of the company in respect to her injuries. The argument is that she was examined by physicians of her own choice and thus had skilled advice from which she could correct any mistaken impression created by the representations or wrong advice of the doctor or adjuster of the company. Cancellation of a release for mutual mistake does not depend upon the source from which the statements or information came which gave rise to the mistake of material fact shared by all parties. A court is warranted in rescinding a release where all parties in interest were actuated by a mutual mistake of material fact regardless of the source from which the information emanated which brought about such mistake. The fact that plaintiff was examined by physicians of her own selection and had the benefit of their opinion in respect to her injuries and condition was entitled to appropriate consideration by the trial court in determining the question whether mutual mistake actually existed and induced the execution of the instrument. But it did not forclose the right of cancellation if mutual mistake did exist and did induce the execution of the document. Scheer v. Rockne Motor Corporation, 2 Cir., 68 F.2d 942.

 Complaint is made that the court denied the motion of the company for more definite findings of fact and conclusions of law. The motion requested the court to make specific findings as to the extent and duration of the injuries, as to the physical condition of plaintiff at the time the release was executed, and as to the facts which constituted the basis of the conclusion that a mistake of fact existed at the time the parties entered into the settlement; and it also requested the court to state separately its conclusions of law based upon such findings of fact. The pertinent part of Rule 52, Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that in all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon. While different in other respects, the rule is not substantially unlike Equity Rule 70½, 11 U.S.C.A. following section 723, in its requirements respecting the making of findings and conclusions. The rule is intended to aid the appellate court by affording a clear understanding of the basis of the decision of the trial court. Shellman v. Shellman, 68 App. D.C. 197, 95 F.2d 108; Brown v. Metropolitan Life Ins. Co., 69 App.D.C. 233, 100 F.2d 98. The findings and conclusions which the court made were sufficient for that purpose, and therefore the denial of the motion for additional ones was not erroneous.

The judgment is affirmed.