CILETTI et al. v. UNION PAC. R. CO.
No. 162, Docket 22231.

United States Court of Appeals
Second Circuit.

Argued Feb. 11, 1952.

Decided April 8, 1952.

Alexander & Green, New York City, for Union Pac. R. Co., defendant-appellant (William R. McDermott, New York City, of counsel).

Isaac M. Rothenberg, New York City, for Harry O. Ciletti and Sophie Ciletti, plaintiffs-appellees.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

Sophie and Harry Ciletti were injured when the defendant's railroad train, in which they were riding as passengers, was derailed on January 30, 1948. Immediately after the accident the Cilettis were removed to a hospital at Ogallala, Nebraska, and later to Doctors Hospital in Omaha where they remained until March 17, 1948. All the expenses of hospitalization were paid by the railroad and the Cilettis executed general releases to the defendant on March 8, 1948 as part of a settlement of their claims for which the defendant conceded its liability, and received in return the sum of $6,500 which was allocated $1,500 to Sophie Ciletti and $5,000 to Harry Ciletti. After being discharged from the hospital, the Cilettis returned to their place of residence in New York and thereafter, on May 21, 1948, instituted the present action in the New York State Court against the defendant seeking damages sustained as a result of the train wreck. The complaint contained allegations that the releases were based on a mutual mistake of fact as to the true nature and extent of the plaintiffs' injuries or were procured by fraud and overreaching on the part of the defendant's agents. The suit was removed to the federal court at the request of the defendant on the ground of diversity of citizenship between the parties.

The defendant's answer raised the defense of the releases which the plaintiffs had executed. A jury trial resulted in a verdict in favor of Sophie Ciletti for $10,000 and of Harry Ciletti for $1,000 for personal injuries and $1,500 for expenses and loss of consortium and of services on the part of his wife.

The first error assigned on this appeal is the district court's denial of the defendant's motion made at the beginning of the trial and renewed at the close of the plaintiffs' case to dismiss the complaint on the ground that the plaintiffs had failed to comply with New York law which required them to rescind the releases prior to bringing suit for personal injuries. The defendant's contention presupposes that New York law applies to the availability of the remedy and we agree that it does. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. However, it is evident that the defendant has misconceived the state of the New York authorities on the subject. It is true that the cases on which the defendant relies, Gilbert v. Rothschild, 280 N.Y. 66, 19 N.E.2d 785, 134 A.L.R. 1; Kamerman v. Curtis, 285 N.Y. 221, 33 N.E.2d 530, and Frehe v. Schildwachter, 289 N.Y. 250, 45 N.E.2d 427, stated the rule that no action could be instituted in derogation of a release admittedly executed unless the plaintiff rescinded or made some attempt at rescission of the release prior to bringing suit. But the rule laid down in those cases required only that the plaintiff, prior to suit, make tender of the benefits he had received as consideration for the execution of the release. This requirement was, however, abolished in 1946 with the enactment of Section 112-g of the New York Civil Practice Act which reads as follows:

"§ 112-g. *Tender of benefits by party rescinding transaction.* A party who has received benefits by reason of a transaction voidable because of fraud, misrepresentation, mistake, duress, infancy or incompetency, and who, in an action or proceeding or by way of defense or counterclaim, seeks rescission, restitution or other relief, whether formerly denominated legal or equitable, dependent upon a determination that such transaction was voidable, shall not be denied relief because of a failure to tender before judgment restoration of such benefits; but the court may

make a tender of restoration a condition of its judgment."

While we are not aware of any New York decisions interpreting Section 112–g, it is clear from the report of the New York Law Revision Commission, who recommended the legislation, that the plaintiffs could have proceeded in the New York courts without doing anything more than filing a complaint in which the validity of the releases was placed in issue. Law Revision Comm'n, Leg.Doc. [1946] No. 65B.

■ Proceeding to the merits, the defendant argues that the proof of mutual mistake or fraud in respect to the releases was insufficient to permit those issues to go to the jury and also argues that the district court's charge was so confusing and self-contradictory as to involve reversible error. We can see no basis for the latter contention and hold that the instructions were adequate.

It appears from the testimony that the Cilettis while being treated by physicians in the employ of the defendant made inquiries of the doctors as to their condition and were given assurances that their injuries were healing satisfactorily and that they would be able to return to their normal work by July 1, 1948. Immediately before the settlement was made, X-rays were taken to determine the condition of each of the plaintiffs in connection with the adjustment of their claims, and the doctors again advised them that everything was coming along nicely and that they had nothing to worry about. As to Mrs. Ciletti, this was not true. Her left clavicle had been broken in the train wreck and the X-rays taken on March 7, 1948—more than a month after the accident—showed that there was no union of the broken bone at that time. She has since had to have an operation performed in which the broken clavicle was made secure by means of a bone graft and she has not as yet recovered the full use of her shoulder and arm. Mr. Ciletti sustained a dislocated shoulder and fractures of the greater tuberosity of the humerus and clavicle. He testified that he was never told of the fractured humerus; that he was informed by the doctors that he was perfectly healed; that he would be able to return to work shortly after his discharge from the hospital; that he signed the release on this understanding; and that since his return to New York he has had pains in his right arm and loss of movement of three fingers of his hand so as to be unable to resume his former occupation.

■ We think that the plaintiffs presented a case for the jury. The doctors were aware that their prognosis made after studying the X-rays taken on March 7 would seriously affect any settlement to be made. Under the circumstances their statements amounted to more than just their opinion as to the future course of healing and might be considered representations as to the plaintiffs' condition as of the time they were made. "There is indeed no absolute line to be drawn between mistakes as to future, and as to present facts. To tell a layman who has been injured that he will be about again in a short time is to do more than prophesy about his recovery. No doubt it is a forecast, but it is ordinarily more than a forecast; it is an assurance as to his present condition, and so understood." Scheer v. Rockne Motors Corp., 2 Cir., 68 F.2d 942, 945. See also Tulsa City Lines v. Mains, 10 Cir., 107 F.2d 377, 380; Thompson v. Camp, 6 Cir., 163 F.2d 396; Graham v. Atchison, T. & S. F. Ry., 9 Cir., 176 F.2d 819. If the defendant's claim agent believed the doctors' statements, and there is some basis in the record for saying that he acted as if he did, then the plaintiffs' evidence was sufficient to rescind the release on the ground of mutual mistake; or if the claim agent knew that the Cilettis condition was not as had been represented by the doctors then the release was subject to rescission for fraud. In either event, it was for the jury to decide whether the plaintiffs' or the defendant's version of the transaction was correct.

■ Concededly, the law of Nebraska controls the validity of the releases, but the Nebraska court's dictum in Simpson v. Omaha & C. B. St. Ry., 107 Neb. 779, 186 N.W. 1001, at 1003, on which the defendant relies as the law of that state, does not indicate any variance with our ruling here. And in LaRosa v. Union Pac. R. R., 142

Neb. 290, 5 N.W.2d 891, the Nebraska court expressly found that the plaintiff knew the nature and extent of his injuries at the time he signed the release and accordingly held it to have been a bar.

For the foregoing reasons, the judgment of the district court is affirmed.