Jeremiah J. McCARTHY and Anna Marie McCarthy, Plaintiffs,

v.

Florence M. CAHILL, Defendant.

Civ. A. No. 1046–63.

United States District Court
District of Columbia.

Jan. 6, 1966.

Earl H. Davis, Washington, D. C., for plaintiffs.

Walter J. Murphy, Jr., Welch, Daily & Welch, Washington, D. C., for defendant.

SIRICA, District Judge.

This matter comes before the Court on the defendant's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. An action was filed by the plaintiffs for damages allegedly suffered by them, as a result of a fall by Mr. McCarthy in the home of

the defendant on December 23, 1960. In addition to denying negligence on her part, the defendant introduced a release signed by both of the plaintiffs which purports to discharge the defendant from any further liability. The plaintiffs maintain that this release was the result of fraud on the part of the agent of the defendant's insurance carrier.

Pursuant to Rule 42, Fed.R.Civ.P., a separate trial was had on the issue of the validity of the release, which resulted in a jury verdict for the plaintiffs setting aside the release. As grounds for setting this verdict aside, the defendant urges that the evidence did not establish the elements of fraud; that it was insufficient to meet the plaintiffs' burden of proof; and that the plaintiffs failed to act with reasonable promptness after discovering what is alleged to have constituted fraud, and that, therefore, they must be deemed to have ratified the alleged fraud. The plaintiffs, on the other hand, assert that the defendant's motion was not timely filed; and that the evidence was sufficient to establish fraud and to meet their burden; and that there was no conduct on their part constituting ratification.

█ Initially, the Court is of the opinion that the plaintiffs' argument that the motion comes too late is not well taken. Assuming, without deciding, that the jury verdict setting aside the release in this case is a "judgment" under Rule 54 of the Federal Rules of Civil Procedure, Rules 50(b) and 59(b) allow ten days from the entry of judgment to file motions for judgment notwithstanding the verdict and for a new trial. Although this time may not be enlarged, Fed.R. Civ.P. 6(b), an additional day is allowed if the last day of the period falls upon a Saturday, a Sunday or a legal holiday, Fed.R.Civ.P. 6(a). In the instant case, the jury verdict was returned on November 18, 1965, and the defendant's motions were filed on November 29, 1965. However, November 28 was a Sunday and accordingly, the filing on November 29 was timely.

█ As to the claim of ratification, the defendant asserts that on the basis of the fact that the alleged fraud was discovered in August of 1962, and that no mention of it was made until April of 1963, when suit was filed, the plaintiffs should be precluded from raising it. Although the plaintiffs' reliance upon Dice v. Akron, Canton & Youngstown R. R., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398 (1952), appears misplaced, this Court cannot say as a matter of law that this delay was of such unreasonable duration that the plaintiffs should be deemed to have ratified the alleged fraud, especially since the defendant has not indicated that she has been prejudiced in any way in the presentation of her defense.

█ It seems to be beyond dispute that to establish fraud, a party must show, by clear and convincing evidence, Public Motor Serv., Inc. v. Standard Oil Co., 69 U.S.App.D.C. 89, 99 F.2d 124 (1938), the following elements:

(1) A representation. (2) Its falsity. (3) Its materiality. (4) The speaker's knowledge of its falsity or ignorance of its truth. (5) His intent that it should be acted on by the person and in the manner reasonably contemplated. (6) The hearer's ignorance of its falsity. (7) His reliance on its truth. (8) His right to rely thereon. Heckenkamp v. Kennedy, 267 F.2d 887, 891 (8th Cir.1949); see United States v. Kiefer, 97 U.S.App.D.C. 101, 228 F. 2d 448, cert. denied, 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815 (1956).

The defendant maintains that the evidence of fraud was not clear and convincing; that any representations made were not material; and that the plaintiffs cannot claim a right to rely on any representations made to them.

█ Viewing the evidence in the light most favorable to the plaintiffs, which the Court must do, the jury could have found that the agent of the defendant's insurance company represented to the plaintiffs that the document they were signing was a receipt for payment

made to Mr. McCarthy for expenses not covered by his workmen's compensation, while in fact the insurance agent knew it to be a release of all liability. The jury could have also found that the agent represented to the plaintiffs that the signing of this document would have no effect upon the balance of their claim against the defendant. The jury could have found further that when the plaintiffs signed the paper it was folded and that neither plaintiff actually read it. The jury could have believed that before they endorsed the draft [1] which they received from the insurance company, a day or so after the release was executed, the plaintiffs never read the language on the back thereof, or if they had seen it, that they believed it was merely a matter of form, because of the representations made to them by the insurance agent. The jury could have also found that a very friendly and amicable relationship existed between the plaintiffs and the insurance agent, and that this relationship caused the plaintiffs to feel that it was unnecessary to read the paper which they thought was a receipt and which turned out to be a release.

■ While this Court does not believe from the evidence that the insurance agent intended to mislead the plaintiffs or that he knowingly made any false statements to the plaintiffs, the fact that the Court would have found in favor of the defendant does not mean that the jury's verdict should, for that reason alone, be set aside. Although the Court has the right to comment to the jury on the evidence, it is not the trier of the facts. See Quercia v. States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). The plaintiffs' testimony was not wholly without confusion, but if the testimony of the plaintiffs and their daughter is to be believed, and apparently the jury did so, the evidence is sufficient to meet their burden of proof, and thus a jury question was raised. See Southwestern Greyhound Lines v. Buchanan, 126 F.2d 179 (5th Cir.), cert. denied, 317 U.S. 646, 63 S.Ct. 41, 87 L.Ed. 520 (1942). This Court is a great believer in the jury system and although it may sometimes disagree with a jury verdict, it will not set one aside unless it is clearly erroneous.

■ The defendant's next contention is that the representations made as to the nature of the paper signed by the plaintiffs were not material. However, as the Court remembers the testimony, the plaintiffs testified that the insurance agent said that the signing of the paper would have no effect on the balance of their claim against the defendant. Obviously, if such a statement was made, and the Court is not indicating a belief

---

[1] In pertinent part the draft as introduced into evidence reads as follows:

Front:

**PHOENIX OF LONDON GROUP**

Issued at Washington, D.C. December 20, 1961

Policy No. H191046 Insured Florence M. Cahill
Loss No. PH49–5–41 Claimant Jeremiah J. McCarthy
Date of Loss 12/23/60 Line OPI Agcy Ellett & Short, Inc.

Upon Acceptance Jeremiah J. McCarthy and Anna M. McCarthy,
Pay to the individually and as Husband and Wife
Order of
the sum of One Hundred Thirty Five and 00/100....Dollars ($135.00)
in payment of claim for injuries sustained on 12/23/60

 ELLETT & SHORT, INC.
 BY: /s/ Gene E. Antoniacci
 Loss Department

Back:

This draft must be endorsed by payee personally and such endorsement shall constitute a release in full for account shown on reverse side.
Make all endorsements below
/s/ Jeremiah J. McCarthy
/s/ Anna M. McCarthy

that this is the case, it would be material. Accord Elledge v. Cornelius, 86 F. Supp. 766 (W.D. Okla.1947).

 The final contention advanced by the defendant is that the plaintiffs cannot claim that their reliance on the agent's representations, if any were in fact made, was reasonable. This contention raises significant questions and the Court will examine the authorities on this point. "The inveterate policy of the law is to encourage, promote, and sustain the compromise and settlement of disputed claims." Tulsa City Lines, Inc. v. Mains, 107 F.2d 377, 380 (10th Cir.1939). Still, if a settlement was the product of a fraud upon which a party relied, it will be set aside. See *Ibid.* While it is the policy of the law to protect the dignity of contracts, there is equally as strong a policy to protect the gullible from sharp practices and not to allow a wrongdoer to profit from his wrong.

 As indicated earlier, a person claiming to have been harmed by a false representation must have a right to rely upon the representation, and this plainly presupposes that the party is justified under all of the circumstances in relying on it. 3 Pomeroy, Equity Jurisprudence § 891 (5th ed. Symons 1941). A question often arising in these cases is whether the party had a duty to investigate the representation made to him. If so, any knowledge that might have been gained by such an investigation is considered as gained, see Palace Laundry Dry Cleaning Co. v. Cole, 41 A.2d 231, 232 (Munic.App.D.C.1945) (dictum), because the general rule is "[o]ne who signs a contract which he had an opportunity to read and understand is bound by its provisions," Paterson v. Reeves, 113 U.S.App.D.C. 74, 75, 304 F.2d 950, 951 (1962).

 In recent years there appears to have been a trend in this area away from the theory of caveat emptor. See Sainsbury v. Pennsylvania Greyhound Lines, 183 F.2d 548, 551, 21 A.L.R.2d 266 (4th Cir.1950). Such a trend is certainly proper for it seems unfair to allow

a wrongdoer to defend on the ground that his word should not have been believed. The Restatement of Torts indicates that in some circumstances an investigation into the truth or falsity of a representation is not necessary to justify reliance upon it. See Restatement, Torts, § 540 (1938). This would seem especially true where such an inquiry would be expensive, difficult or demand a certain amount of expertise not possessed by the party, or where the truth of the matter would be particularly within the knowledge of the person making the representation. See, e. g., Stein v. Treger, 86 U. S.App.D.C. 400, 182 F.2d 696 (1950). However, where the truth or falsity of the representation is obvious on its face, or if a mere cursory glance would have revealed its falsity, the party would not necessarily be justified in relying upon the representation, see Restatement, op. cit. supra § 540, comment b; § 541 and comment a, the rationale being that if something is apparent to ordinary observation it cannot be ignored, see Sainsbury v. Pennsylvania Greyhound Lines, supra, 183 F.2d at 551. In the last analysis, then, whether there is a duty to inquire in a particular case depends on what is reasonable under the circumstances. See Chesapeake & O. Ry. v. Howard, 14 App.D.C. 262, 294–295 (1899), aff'd, 178 U.S. 153, 20 S.Ct. 880, 44 L.Ed. 1015 (1900). If under all of the circumstances it would be reasonable to rely solely upon the representations made, then a failure to investigate will not preclude a party from moving to set aside the transaction. On the other hand, if under all of the circumstances it would be unreasonable to rely solely upon the representations made, then the party will be bound by his action.

 With the foregoing principles in mind, the Court will examine the circumstances surrounding the transactions involved herein to determine if it was reasonable for the plaintiffs to fail to read the papers which they signed, or if they did read them, whether they should have relied upon the representations they said were made to them. The evidence in this

case indicates that neither of the plaintiffs were persons of considerable education. While Mr. McCarthy was a businessman, the president of his own company, it appears that the business was by no means a large one but rather a small one which was more or less a family affair. Further, it appears that neither Mr. nor Mrs. McCarthy were trained in business but that his experience was in the field of electronics and his work consisted primarily in the sale and repair of electrical appliances. As indicated earlier, the plaintiffs and the insurance agent became quite friendly after Mr. McCarthy's accident. The plaintiff, Mr. McCarthy, and the agent were both Roman Catholics and the testimony indicated that they discussed at some length the desire of the agent to join the Knights of Columbus, of which Mr. McCarthy was a member. And further, around the time when the plaintiffs signed the release in question here, Mr. McCarthy presented the agent with a Christmas present.

In view of these circumstances, the Court cannot rule that as a matter of law it was unreasonable for the plaintiffs to sign without inquiring into the contents of the document even though they never denied having an opportunity to read it. In addition to the opportunity available for examination, the Court feels that the relationship between the parties must also be considered in determining whether the plaintiffs acted reasonably, and that because of the relationship here, it was not unreasonable as a matter of law for the plaintiffs to trust the agent and rely solely upon what he allegedly said. As stated earlier, the Court is not indicating its belief that any false representations were made but is merely accepting the jury findings for the purposes of these motions.

██ ██ The relationship between the parties must also be examined in determining the reasonableness of the plaintiffs' signing of the draft a short time after they signed the release. Although the evidence indicated that the insurance company's agent was not present when the plaintiffs signed the draft, and even assuming that the plaintiffs read the language on the draft, the jury could have found that they were still under the influence of the representations allegedly made to them and that, having no reason to distrust the agent, they considered the language on this draft to be merely a matter of form. The Court cannot say that, as a matter of law, such a finding would be incorrect, or that the plaintiffs' actions were unreasonable under these circumstances.

For the foregoing reasons, the motion of the defendant for judgment notwithstanding the verdict, or in the alternative, for a new trial, is denied.